# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**     **2. PLEASE TYPE OR PRINT**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Bimbo Bakeries USA, Inc. v. Provencher | District of Vermont | Hon. William K. Sessions, III, Senior District Judge |

| | | |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket: <br> April 2, 2024; June 3, 2024 | District Court Docket No.: <br> 22-cv-198 |
| | Date the Notice of Appeal was Filed: <br> November 26, 2024 | Is this a Cross Appeal? <br> ☐ Yes   ☑ No |

| **Attorney(s) for Appellant(s):** <br> ☐ Plaintiff <br> ☑ Defendant | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail: <br> Randall M. Levine; James D. Nelson <br> Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, NW, Washington, DC 20004 <br> T. 202.739.3000, F. 202.739.3001 <br> randall.levine@morganlewis.com; james.nelson@morganlewis.com |
|---|---|

| **Attorney(s) for Appellee(s):** <br> ☑ Plaintiff <br> ☐ Defendant | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail: <br> Shawn J. Wanta; Scott Moriarity <br> Wanta Thome PLC, 100 South Fifth Street, Suite 1200, Minneapolis, MN 55402 <br> 612.252.3570; sjwanta@wantathome.com; samoriarity@wantathome.com <br><br> Merrill E. Bent <br> Woolmington, Campbell, Bent & Stasny, P.C., 4900 Main Street, P.O. Box 2748, Manchester Center, VT 05255 <br> 802.362.2560; merrill@greenmtlaw.com |
|---|---|

| Has Transcript Been Prepared? <br> Yes | Approx. Number of Transcript Pages: <br> 91 Pages | Number of Exhibits Appended to Transcript: <br> Zero | Has this matter been before this Circuit previously? ☑ Yes   ☐ No <br><br> If Yes, provide the following: <br><br> Case Name:   Bimbo Bakeries USA, Inc. v. Provencher <br><br> 2d Cir. Docket No.:   24-1601     Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

**ADDENDUM "A"**: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

**ADDENDUM "B"**: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

## PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| ☐ U.S. a party | ☐ Diversity | ☐ Final Decision | ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party) | ☐ Other (specify): | ☐ Interlocutory Decision Appealable As of Right | ☑ Other (specify): 28 U.S.C. 1292(b) grant |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B:  DISTRICT COURT DISPOSITION**   (Check as many as apply)

1. Stage of Proceedings

[✓] Pre-trial
[ ] During trial
[ ] After trial

**Interlocutory appeal, personal juris. order.**

2. Type of Judgment/Order Appealed

[ ] Default judgment
[ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
[ ] Dismissal/FRCP 12(b)(6) failure to state a claim
[ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
[ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

[ ] Dismissal/other jurisdiction
[ ] Dismissal/merit
[ ] Judgment / Decision of the Court
[ ] Summary judgment
[ ] Declaratory judgment
[ ] Jury verdict
[ ] Judgment NOV
[ ] Directed verdict
[✓] Other (specify):

3. Relief

[ ] Damages:
    [ ] Sought: $ _____
    [ ] Granted: $ _____
    [ ] Denied: $ _____

[ ] Injunctions:
    [ ] Preliminary
    [ ] Permanent
    [ ] Denied

**PART C:  NATURE OF SUIT**   (Check as many as apply)

1. Federal Statutes

[ ] Antitrust
[ ] Bankruptcy
[ ] Banks/Banking
[ ] Civil Rights
[ ] Commerce
[ ] Energy
[ ] Commodities
[ ] Other (specify): _____

[ ] Communications
[ ] Consumer Protection
[ ] Copyright □ Patent
[ ] Trademark
[ ] Election
[ ] Soc. Security
[ ] Environmental

[ ] Freedom of Information Act
[ ] Immigration
[✓] Labor
[ ] OSHA
[ ] Securities
[ ] Tax

2. Torts

[ ] Admiralty/ Maritime
[ ] Assault / Defamation
[ ] FELA
[ ] Products Liability
[ ] Other (Specify):

3. Contracts

[ ] Admiralty/ Maritime
[ ] Arbitration
[ ] Commercial
[ ] Employment
[ ] Insurance
[ ] Negotiable Instruments
[ ] Other Specify

4. Prisoner Petitions

[ ] Civil Rights
[ ] Habeas Corpus
[ ] Mandamus
[ ] Parole
[ ] Vacate Sentence
[ ] Other

5. Other

[ ] Hague Int'l Child Custody Conv.
[ ] Forfeiture/Penalty
[ ] Real Property
[ ] Treaty (specify): _____
[ ] Other (specify): _____

6. General

[ ] Arbitration
[ ] Attorney Disqualification
[ ] Class Action
[ ] Counsel Fees
[ ] Shareholder Derivative
[ ] Transfer

7. Will appeal raise constitutional issue(s)?
[✓] Yes     [ ] No

Will appeal raise a matter of first impression?
[✓] Yes     [ ] No

1. Is any matter relative to this appeal still pending below? [✓] Yes, specify:  case not stayed, some discovery ongoing   [ ] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?     [ ] Yes   [✓] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?     [ ] Yes   [✓] No

If yes, state whether  □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

Date:  December 10, 2024

Signature of Counsel of Record:  /s/ Randall M. Levine

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

*Provencher v. Bimbo Bakeries USA, Inc.*
No. 24-3112

**CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)**
<u>ADDENDUM A</u>

Plaintiffs Arthur Provencher and Michael McGuire are independent contractor distributors (known as Independent Business Partners or "IBPs") who contract with Bimbo Foods Bakeries Distribution, LLC, or its predecessors, to purchase and sell baked goods to retail customers. Plaintiffs all operate their businesses and reside in Vermont.

Plaintiffs initiated this action on October 28, 2022. They allege that they were misclassified as independent contractors. According to Plaintiffs, this misclassification resulted in them not being paid overtime compensation. Dkt. 1; 29 U.S.C. § 207(a)(1). Plaintiffs do not allege any events relevant to their claims occurring outside of Vermont.

Plaintiffs filed a motion for collective action certification under the Fair Labor Standards Act, including a request to send notice of the action to putative opt-in plaintiffs in other states. Dkt. 63. In opposing this motion, Petitioners argued that the district court lacks personal jurisdiction under *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017), to adjudicate the claims of putative opt-in plaintiffs whose claims did not arise in Vermont (the forum state). Even where a state can exercise personal jurisdiction over a defendant with respect to some plaintiffs' claims which arose in-state, in can not exercise personal jurisdiction over an out-of-state defendant with respect to other claims (even if related) which arose in other states. *See id.* at 264–65, 268–69.

The district court disagreed with Petitioners' argument and granted Plaintiffs' motion for conditional FLSA certification, holding that it has personal jurisdiction over out-of-state putative opt-in plaintiffs' claims. *See* Dkt. 89. The district court recognized, however, that the personal jurisdiction question is a pure question of law that is controlling, and over which there is substantial ground for difference of opinion and would resolve the court's jurisdiction for the vast majority of putative opt-in plaintiffs. *See* Dkt. 102. This Court likewise granted Petitioners' request for interlocutory review.

## U.S. District Court
## District of Vermont (Burlington)
## CIVIL DOCKET FOR CASE #: 2:22–cv–00198–wks

| | |
|---|---|
| Provencher et al v. Bimbo Bakeries USA, Inc. et al | Date Filed: 10/28/2022 |
| Assigned to: Judge William K. Sessions III | Jury Demand: None |
| Demand: $5,000,000,000 | Nature of Suit: 710 Labor: Fair Standards |
| Cause: 29:201 Fair Labor Standards Act | Jurisdiction: Federal Question |

**Plaintiff**

**Arthur Provencher**
*individually and on behalf of all similarly
situated individuals*

represented by **Merrill E. Bent , Esq.**
Woolmington, Campbell, Bernal & Bent,
P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255–2748
(802) 362–2560
Fax: (802) 362–7109
Email: merrill@greenmtlaw.com
*ATTORNEY TO BE NOTICED*

**Nicholas P. DeMaris , Esq.**
Wanta Thome PLC
100 South Fifth Street
Suite 1200
Minneapolis, MN 55402
248–918–9884
Email: npdemaris@wantathome.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott A. Moriarity , Esq.**
Wanta Thome PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
612–252–3578
Email: samoriarity@wantathome.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shawn J. Wanta , Esq.**
Wanta Thome PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
612–252–3570
Fax: 612–252–3571
Email: sjwanta@wantathome.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael McGuire**
*individually and on behalf of all similarly
situated individuals*

represented by **Merrill E. Bent , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas P. DeMaris , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott A. Moriarity , Esq.**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Shawn J. Wanta , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Martel**                                represented by    **Merrill E. Bent , Esq.**
*individually and on behalf of all similarly*                       (See above for address)
*situated individuals*                                              *ATTORNEY TO BE NOTICED*
*TERMINATED: 06/03/2024*

**Nicholas P. DeMaris , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott A. Moriarity , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shawn J. Wanta , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bimbo Bakeries USA, Inc.**                     represented by    **Douglas T. Schwarz , Esq.**
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
(212) 309–6890
Fax: (212) 309–6001
Email: douglas.schwarz@morganlewis.com
*(Inactive)*
*TERMINATED: 02/06/2024*
*ATTORNEY TO BE NOTICED*

**Elizabeth K. Rattigan , Esq.**
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402–0190
(802) 863–2375
Fax: (802) 862–7512
Email: erattigan@drm.com
*ATTORNEY TO BE NOTICED*

**Keri L. Engelman , Esq.**
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110–1726
617–341–7828
Email: keri.engelman@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren E. Marzullo , Esq.**
Morgan, Lewis & Bockius LLP
301 Grant Street

One Oxford Centre
32nd Floor
Pittsburgh, PA 15219
412–560–7407
Fax: 412–560–7001
Email: lauren.marzullo@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Grace Parsons**
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110–1726
617–341–7000
Email: marygrace.parsons@morganlewis.com
*(Inactive)*
*TERMINATED: 02/06/2024*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Puma , Esq.**
Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103
215–963–5305
Email: michael.puma@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Bimbo Foods Bakeries Distribution, LLC** | represented by | **Douglas T. Schwarz , Esq.**<br>(See above for address)<br>*TERMINATED: 02/06/2024*<br>*ATTORNEY TO BE NOTICED* |
| | | **Elizabeth K. Rattigan , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Keri L. Engelman , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Lauren E. Marzullo , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Mary Grace Parsons**<br>(See above for address)<br>*TERMINATED: 02/06/2024*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael J. Puma , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Counter Defendant**

| | | |
|---|---|---|
| **Ronald Martel**<br>*TERMINATED: 12/05/2023* | represented by | **Merrill E. Bent , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Nicholas P. DeMaris , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott A. Moriarity , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shawn J. Wanta , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Michael McGuire**                 represented by   **Merrill E. Bent , Esq.**
*TERMINATED: 12/05/2023*                            (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Nicholas P. DeMaris , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott A. Moriarity , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shawn J. Wanta , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Arthur Provencher**               represented by   **Merrill E. Bent , Esq.**
*TERMINATED: 12/05/2023*                            (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Nicholas P. DeMaris , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott A. Moriarity , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shawn J. Wanta , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Julie A. Su**                     represented by   **Emily V. Wilkinson , Esq.**
*Acting Secretary of Law, United States*            U.S. Department of Labor, Office of the
*Department of Labor*                               Solicitor
*TERMINATED: 04/22/2024*                            John F. Kennedy Federal Building
                                                    Suite E–375
                                                    Boston, MA 02203

617−565−2532
Email: wilkinson.emily.v@dol.gov

**Mark A. Pedulla , Esq.**
U.S. Department of Labor
Office of the Solicitor
JFK Federal Building, Room E−375
25 New Sudbury Street
Boston, MA 02203
617−565−2500
Fax: 617−565−2142
Email: pedulla.mark.a@dol.gov

**Counter Claimant**

| | | |
|---|---|---|
| **Bimbo Bakeries USA, Inc.**<br>*TERMINATED: 12/05/2023* | represented by | **Douglas T. Schwarz , Esq.**<br>(See above for address)<br>*TERMINATED: 02/06/2024*<br>*ATTORNEY TO BE NOTICED* |
| | | **Elizabeth K. Rattigan , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Keri L. Engelman , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Lauren E. Marzullo , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Mary Grace Parsons**<br>(See above for address)<br>*TERMINATED: 02/06/2024*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael J. Puma , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **Bimbo Foods Bakeries Distribution, LLC**<br>*TERMINATED: 12/05/2023* | represented by | **Douglas T. Schwarz , Esq.**<br>(See above for address)<br>*TERMINATED: 02/06/2024*<br>*ATTORNEY TO BE NOTICED* |
| | | **Elizabeth K. Rattigan , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Keri L. Engelman , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Lauren E. Marzullo , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Mary Grace Parsons**<br>(See above for address)<br>*TERMINATED: 02/06/2024*<br>*ATTORNEY TO BE NOTICED* |

**Michael J. Puma , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/28/2022 | 1 | COMPLAINT–CLASS ACTION against Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC filed by Arthur Provencher, Michael McGuire, Ronald Martel. Summons issued. (Attachments: # 1 Civil Cover Sheet)(law) (Entered: 10/28/2022) |
| 11/17/2022 | 2 | MOTION for Admission Pro Hac Vice of Shawn J. Wanta filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Attachments: # 1 Affidavit of Shawn J. Wanta, # 2 Exhibit A)(law) Attachment description clarified on 11/18/2022 (law). (Entered: 11/17/2022) |
| 11/17/2022 | 3 | MOTION for Admission Pro Hac Vice of Nicholas P. DeMaris filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Attachments: # 1 Affidavit of Nicholas P. DeMaris, # 2 Exhibit A)(law) Attachment description clarified on 11/18/2022 (law). (Entered: 11/17/2022) |
| 11/17/2022 | 4 | MOTION for Admission Pro Hac Vice of Scott A. Moriarity filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Attachments: # 1 Affidavit of Scott A. Moriarity, # 2 Exhibit A) (law) Attachment description clarified on 11/18/2022 (law). (Entered: 11/17/2022) |
| 11/17/2022 | 5 | ORDER granting 2 Motion for Admission of Shawn J. Wanta Pro Hac Vice; granting 3 Motion for Admission of Nicholas P. DeMaris Pro Hac Vice; granting 4 Motion for Admission of Scott A. Moriarity Pro Hac Vice. Signed by Judge William K. Sessions III on 11/17/2022. (This is a text–only Order.) (eae) (Entered: 11/17/2022) |
| 12/08/2022 | 6 | Entry removed on 12/8/2022. (law) (Entered: 12/08/2022) |
| 12/08/2022 | 7 | AFFIDAVIT of Service filed by Arthur Provencher, Michael McGuire, Ronald Martel. Bimbo Bakeries USA, Inc. served on 11/8/2022, answer due 11/29/2022(Bent, Merrill) (Entered: 12/08/2022) |
| 12/08/2022 | 8 | AFFIDAVIT of Service filed by Arthur Provencher, Michael McGuire, Ronald Martel. Bimbo Foods Bakeries Distribution, LLC served on 11/8/2022, answer due 11/29/2022. (Bent, Merrill) Text clarified on 12/8/2022 (law). (Entered: 12/08/2022) |
| 12/08/2022 | 9 | NOTICE OF DOCKET ENTRY REMOVAL: Document 6 has been removed from the docket as filed in error; see correction at 8 . (law) (Entered: 12/08/2022) |
| 12/13/2022 | 10 | STIPULATED MOTION for Extension of Time to File Answer re 1 Complaint filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC.(Schwarz, Douglas) (Entered: 12/13/2022) |
| 12/14/2022 | 11 | ORDER granting 10 Stipulated Motion for Extension of Time to Answer re 1 Complaint. Signed by Judge William K. Sessions III on 12/14/2022. (This is a text–only Order.) (eae) (Entered: 12/14/2022) |
| 01/20/2023 | 12 | NOTICE OF APPEARANCE by Elizabeth K. Rattigan, Esq on behalf of Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC.(Rattigan, Elizabeth) (Entered: 01/20/2023) |
| 01/23/2023 | 13 | MOTION for Admission Pro Hac Vice of Mary Grace Parsons filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Declaration of Mary Grace Parsons, # 2 Certificate of Good Standing)(law) (Entered: 01/23/2023) |
| 01/23/2023 | 14 | MOTION for Admission Pro Hac Vice of Keri Engelman filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Declaration of Keri Engelman, # 2 Certificate of Good Standing)(law) (Entered: 01/23/2023) |
| 01/23/2023 | 15 | MOTION for Admission Pro Hac Vice of Michael J. Puma filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Declaration of |

| | | |
|---|---|---|
| | | Michael J. Puma, # 2 Certificate of Good Standing, # 3 Certificate of Service)(law) (Entered: 01/23/2023) |
| 01/23/2023 | 16 | ORDER granting 13 Motion for Admission of Mary Grace Parsons Pro Hac Vice; granting 14 Motion for Admission of Keri Engelman Pro Hac Vice; granting 15 Motion for Admission of Michael J. Puma Pro Hac Vice. Signed by Judge William K. Sessions III on 1/23/2023. (This is a text–only Order.) (eae) (Entered: 01/23/2023) |
| 01/23/2023 | 17 | MOTION to Strike Class Claims of 1 Complaint filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Memorandum in Support)(Rattigan, Elizabeth) (Entered: 01/23/2023) |
| 01/23/2023 | 18 | ANSWER to Complaint, COUNTERCLAIM against Arthur Provencher, Michael McGuire, Ronald Martel filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N)(Rattigan, Elizabeth) (Additional attachment(s) added on 1/24/2023: # 15 Index of Exhibits) (law). Text clarified on 3/13/2023 (law). (Entered: 01/23/2023) |
| 01/23/2023 | 19 | MOTION for Judgment on the Pleadings filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Memorandum in Support)(Rattigan, Elizabeth) (Entered: 01/23/2023) |
| 01/23/2023 | 20 | CORPORATE DISCLOSURE STATEMENT pursuant to Local Rule 7.1(a) by Bimbo Foods Bakeries Distribution, LLC (Rattigan, Elizabeth) (Entered: 01/23/2023) |
| 01/23/2023 | 21 | CORPORATE DISCLOSURE STATEMENT pursuant to Local Rule 7.1(a) by Bimbo Bakeries USA, Inc. (Rattigan, Elizabeth) (Entered: 01/23/2023) |
| 01/24/2023 | 22 | NOTICE OF DOCKET ENTRY CORRECTION re: 18 Answer to Complaint and Counterclaim filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. The required Index of Exhibits was not included at the time of filing. The index is now attached to 18 and this filing. (law) (Entered: 01/24/2023) |
| 02/06/2023 | 23 | RESPONSE in Opposition re 17 MOTION to Strike Class Claims of 1 Complaint filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Bent, Merrill) (Entered: 02/06/2023) |
| 02/07/2023 | 24 | STIPULATED MOTION for Extension of Time *of Briefing Schedule* re: 18 Counterclaim, 17 MOTION to Strike Class Claims of 1 Complaint, 19 MOTION for Judgment on the Pleadings filed by Ronald Martel, Michael McGuire, Arthur Provencher.(Wanta, Shawn) Event/text clarified on 2/8/2023 (law). (Entered: 02/07/2023) |
| 02/08/2023 | 25 | ORDER granting 24 Stipulated Motion for Extension of Time of Briefing Schedule re: 18 Counterclaim, 17 MOTION to Strike Class Claims of 1 Complaint, 19 MOTION for Judgment on the Pleadings. Signed by Judge William K. Sessions III on 2/8/2023. (This is a text–only Order.) (eae) (Entered: 02/08/2023) |
| 02/27/2023 | 26 | REPLY to Response to 17 MOTION to Strike Class Claims of 1 Complaint filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Declaration of Keri L. Engelman, # 2 Exhibit A)(Rattigan, Elizabeth) (Entered: 02/27/2023) |
| 03/08/2023 | 27 | MOTION to Intervene *or, in the Alternative,* MOTION for Leave to File *Amicus Brief* filed by Martin J. Walsh. (Attachments: # 1 Memorandum in Support # 2 [Proposed] Motion to Dismiss Defendants' Counterclaim, # 3 Memorandum in Support of [Proposed] Motion to Dismiss Defendants' Counterclaim)(Pedulla, Mark). Added MOTION for Leave to File and attachment descriptions clarified on 3/9/2023 (law). (Entered: 03/08/2023) |
| 03/10/2023 | 28 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File *Amicus Brief* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC.(Rattigan, Elizabeth) (Entered: 03/10/2023) |

| 03/10/2023 | 29 | ORDER granting 28 STIPULATED MOTION for Extension of Time to File Response/Reply as to 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File *Amicus Brief*. Signed by Judge William K. Sessions III on 3/10/2023. (This is a text–only Order.) (eae) (Entered: 03/10/2023) |
|---|---|---|
| 03/10/2023 | 30 | RESPONSE in Opposition to 19 MOTION for Judgment on the Pleadings filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Wanta, Shawn) (Entered: 03/10/2023) |
| 03/10/2023 | 31 | MOTION to Dismiss *Counterclaims* for Failure to State a Claim filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Attachments: # 1 Memorandum in Support)(Moriarity, Scott) (Entered: 03/10/2023) |
| 03/31/2023 | 32 | REPLY to Response to 19 MOTION for Judgment on the Pleadings filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) (Entered: 03/31/2023) |
| 04/04/2023 | 33 | RESPONSE in Opposition re 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File *Amicus Brief* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A re Opposition to Motion to Intervene, # 2 Appendix A)(Rattigan, Elizabeth) (Entered: 04/04/2023) |
| 04/10/2023 | 34 | RESPONSE in Opposition re 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) (Entered: 04/10/2023) |
| 04/18/2023 | 35 | REPLY to Response to 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File *Amicus Brief* filed by Martin J. Walsh. (Pedulla, Mark) (Entered: 04/18/2023) |
| 04/24/2023 | 36 | REPLY to Response to 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Moriarity, Scott) (Entered: 04/24/2023) |
| 05/10/2023 | 37 | STIPULATED MOTION for Oral Argument filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC re 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File Amicus Brief .(Rattigan, Elizabeth) Text clarified, link added on 5/10/2023 (law). (Entered: 05/10/2023) |
| 05/10/2023 | 38 | MOTION for Leave to File *Sur–Reply Brief* as to 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A)(Rattigan, Elizabeth) Attachment description clarified on 5/10/2023 (law). (Entered: 05/10/2023) |
| 05/17/2023 | 39 | RESPONSE in Opposition re 38 MOTION for Leave to File *Sur–Reply Brief* as to 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Bent, Merrill) (Entered: 05/17/2023) |
| 07/11/2023 | 40 | NOTICE of Hearing re: 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File *Amicus Brief*; 17 MOTION to Strike Class Claims of 1 Complaint ; 19 MOTION for Judgment on the Pleadings ; 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim. Motion Hearing set for 8/14/2023 at 01:30 PM in Burlington Courtroom 110 before Judge William K. Sessions III.(law) (Main Document 40 replaced to correct typo on 7/11/2023) (law). (Entered: 07/11/2023) |
| 08/07/2023 | 41 | OPINION AND ORDER: the Secretary of the Dept of Labor's 27 MOTION to Intervene *or, in the Alternative* for Leave to File *Amicus Brief* for the limited purpose of opposing Defendants' counterclaim is granted. Signed by Judge William K. Sessions III on 8/7/2023. (law) (Entered: 08/07/2023) |
| 08/07/2023 | 42 | OPINION AND ORDER denying without prejudice (as premature) 17 MOTION to Strike Class Claims of 1 Complaint . Signed by Judge William K. Sessions III on 8/7/2023. (law) (Entered: 08/07/2023) |
| 08/09/2023 | 43 | NOTICE OF APPEARANCE by Emily V. Wilkinson, Esq on behalf of Julie A. Su.(Wilkinson, Emily) Filer modified on 8/10/2023 (law). (Entered: 08/09/2023) |
| 08/09/2023 | 44 | MOTION to Dismiss 18 Counterclaim filed by Julie A. Su. (Attachments: # 1 Memorandum in Support) (Wilkinson, Emily) Text clarified on 8/9/2023 (jlh). Filer |

| | | |
|---|---|---|
| | | clarified on 8/10/2023 (law). (Entered: 08/09/2023) |
| 08/09/2023 | 45 | JOINT MOTION to Continue *and* JOINT MOTION to Consolidate Motion Hearings filed by Julie A. Su. (Wilkinson, Emily) Filer clarified and Added MOTION to Consolidate on 8/10/2023 (law). (Entered: 08/09/2023) |
| 08/10/2023 | 46 | ORDER granting 45 Joint Motion to Continue and Consolidate Motion Hearings. Signed by Judge William K. Sessions III on 8/10/2023. (This is a text–only Order.) (eae) (Entered: 08/10/2023) |
| 09/08/2023 | 47 | RESPONSE in Opposition re 44 MOTION to Dismiss 18 Counterclaim filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) (Entered: 09/08/2023) |
| 09/18/2023 | 48 | SUPPLEMENTAL DOCUMENT(S) re: 19 MOTION for Judgment on the Pleadings by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A)(Rattigan, Elizabeth) Text/link clarified on 9/18/2023 (law). (Entered: 09/18/2023) |
| 09/18/2023 | 49 | NOTICE of Hearing: Consolidated Motion Hearing on all pending motions re: 19 MOTION for Judgment on the Pleadings , 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim, 44 MOTION to Dismiss 18 Counterclaim, 38 MOTION for Leave to File *Sur–Reply Brief* as to 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim. Motion Hearing set for 11/13/2023 at 09:30 AM in Burlington Courtroom 110 before Judge William K. Sessions III.(law) (Entered: 09/18/2023) |
| 09/19/2023 | 50 | ORDER denying as moot 37 Stipulated Motion for Oral Argument re 27 MOTION to Intervene *or, in the Alternative* MOTION for Leave to File Amicus Brief . Signed by Judge William K. Sessions III on 9/19/2023. (This is a text–only Order.) (eae) (Entered: 09/19/2023) |
| 09/22/2023 | 51 | REPLY to Response to 44 MOTION to Dismiss 18 Counterclaim filed by Julie A. Su. (Wilkinson, Emily) (Entered: 09/22/2023) |
| 10/24/2023 | 52 | NOTICE of Supplemental Authority re: 44 MOTION to Dismiss 18 Counterclaim by Julie A. Su. (Wilkinson, Emily) Text clarified/link removed on 10/24/2023 (law). (Entered: 10/24/2023) |
| 11/03/2023 | 53 | RESPONSE to 52 NOTICE of Supplemental Authority re: 44 MOTION to Dismiss 18 Counterclaim by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) Link added, text clarified on 11/3/2023 (law). (Entered: 11/03/2023) |
| 11/06/2023 | 54 | MOTION for Appearance Pro Hac Vice of Lauren E. Marzullo, Esq. filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Attachments: # 1 Declaration of Lauren E. Marzullo, # 2 Certificate of Good Standing)(jh) (Entered: 11/06/2023) |
| 11/07/2023 | 55 | ORDER granting 54 Motion for Admission Pro Hac Vice of Lauren E. Marzullo. Signed by Judge William K. Sessions III on 11/7/2023. (This is a text–only Order.) (eae) (Entered: 11/07/2023) |
| 11/13/2023 | 56 | MINUTE ENTRY for proceedings held before Judge William K. Sessions III: Motion Hearing held on 11/13/2023 re 19 MOTION for Judgment on the Pleadings; 44 MOTION to Dismiss 18 Counterclaim; 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim. Attorneys Merrill Bent and Scott Moriarity present for pltfs. Attorneys Elizabeth Rattigan and Keri Engelman present for defts. Attorneys Emily Wilkinson and Mark Pedulla present for intervenor. Statements by counsel. ORDERED: motions taken under advisement. (Court Reporter: Sarah Bentley, Capital Court Reporters) (law) (Entered: 11/13/2023) |
| 11/21/2023 | 57 | TRANSCRIPT of Pending Motions hearing held on November 13, 2023, before Judge William K. Sessions III. Court Reporter/Transcriber Sarah Bentley, Capital Court Reporters, telephone number (802/800) 863–6067. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/15/2023. Redacted Transcript Deadline set for 12/26/2023. Release of Transcript Restriction set for 2/22/2024. (law) (Entered: |

| | | 11/21/2023) |
|---|---|---|
| 12/05/2023 | 58 | OPINION AND ORDER **denying** 19 Motion for Judgment on the Pleadings; **granting** 31 and 44 Motions to Dismiss *Counterclaims* for Failure to State a Claim; **denying as moot** 38 Motion for Leave to File *Sur–Reply Brief* as to 31 MOTION to Dismiss *Counterclaims* for Failure to State a Claim. Signed by Judge William K. Sessions III on 12/4/2023. (law) (Entered: 12/05/2023) |
| 12/08/2023 | 59 | STIPULATED DISCOVERY LETTER SENT re: no stipulated discovery schedule filed; case will be set for a scheduling conference unless stipulated schedule is filed. (law) (Entered: 12/08/2023) |
| 12/19/2023 | 60 | DISCOVERY CERTIFICATE – Interrogatories and Request to Produce by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC.(Rattigan, Elizabeth) (Entered: 12/19/2023) |
| 01/02/2024 | 61 | PROPOSED Stipulated Discovery Schedule/Order by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC.(Rattigan, Elizabeth) (Entered: 01/02/2024) |
| 01/23/2024 | 62 | NOTICE of Hearing: Rule 16 Conference set for 2/12/2024 at 03:00 PM in Burlington Courtroom 110 before Judge William K. Sessions III.(law) (Entered: 01/23/2024) |
| 01/23/2024 | 63 | MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Ronald Martel, Michael McGuire, Arthur Provencher (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Declaration of Arthur Provencher, # 4 Exhibit a, # 5 Declaration of Michael McGuire, # 6 Exhibit A, # 7 Declaration of Ronald Martel, # 8 Exhibit A, # 9 Proposed Order)(Moriarity, Scott) Text clarified on 1/23/2024 (law). (Entered: 01/23/2024) |
| 01/26/2024 | 64 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Rattigan, Elizabeth) (Entered: 01/26/2024) |
| 01/26/2024 | 65 | EXPEDITED MOTION for Leave to Exceed Page Limit as to 63 MOTION for FLSA Conditional Certification and Judicial Notice filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) Event/text clarified, link added on 1/26/2024 (law). (Entered: 01/26/2024) |
| 01/31/2024 | 66 | ORDER granting 64 STIPULATED MOTION for Extension of Time to File Response/Reply as to 63 MOTION for FLSA Conditional Certification *and Judicial Notice*. Signed by Judge William K. Sessions III on 1/31/2024. (This is a text–only Order.) (eae) (Entered: 01/31/2024) |
| 02/06/2024 | 67 | NOTICE *of Withdrawal of Parsons* by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Rattigan, Elizabeth) (Entered: 02/06/2024) |
| 02/06/2024 | 68 | NOTICE *of Withdrawal of Schwarz* by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Rattigan, Elizabeth) (Entered: 02/06/2024) |
| 02/07/2024 | 69 | MOTION for Clarification of Court's Notice of Rule 16 Conference re 62 Notice of Hearing filed by Julie A. Su. (Wilkinson, Emily) (Entered: 02/07/2024) |
| 02/09/2024 | 70 | ORDER granting 69 Motion For Clarification of Rule 16 Conference Notice of Hearing. Signed by Judge William K. Sessions III on 2/9/2024. (This is a text–only Order.) (eae) (Entered: 02/09/2024) |
| 02/09/2024 | 71 | RESPONSE in Opposition re 65 EXPEDITED MOTION for Leave to Exceed Page Limit as to 63 MOTION for FLSA Conditional Certification and Judicial Notice filed by Ronald Martel, Michael McGuire, Arthur Provencher. (DeMaris, Nicholas) (Entered: 02/09/2024) |
| 02/12/2024 | 72 | REPLY to Response to 65 EXPEDITED MOTION for Leave to Exceed Page Limit as to 63 MOTION for FLSA Conditional Certification and Judicial Notice filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) (Entered: 02/12/2024) |
| 02/12/2024 | 73 | MINUTE ENTRY for proceedings held before Judge William K. Sessions III: Rule 16 Conference held on 2/12/2024. Merrill Bent, Esq. and Scott Moriarty, Esq. present for |

| | | |
|---|---|---|
| | | pltfs. Elizabeth Rattigan, Esq. and Keri Engelman, Esq. present for defts. Statements by counsel re: phased discovery. ORDERED: granting 65 EXPEDITED MOTION for Leave to Exceed Page Limit as to 63 MOTION for FLSA Conditional Certification and Judicial Notice. Pltf orally moves to exceed page limit as to their reply. ORDERED: request granted. (Court Reporter: Sarah Bentley, Capital Court Reporters) (law) (Entered: 02/12/2024) |
| 02/22/2024 | 74 | TRANSCRIPT of Rule 16 Conference hearing held on February 12, 2024, before Judge William K. Sessions III. Court Reporter/Transcriber Sarah M. Bentley, telephone number (802) 863–6067. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/18/2024. Redacted Transcript Deadline set for 3/28/2024. Release of Transcript Restriction set for 5/28/2024. (law) Text clarified on 2/22/2024 (law). (Entered: 02/22/2024) |
| 02/22/2024 | 75 | RESPONSE in Opposition re 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Declaration of Lauren Marzullo, # 2 Appendix, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I)(Rattigan, Elizabeth) (Attachment 3 replaced on 2/23/2024) (law). (Attachment 4 replaced on 2/23/2024) (law). (Attachment 5 replaced on 2/23/2024) (law). (Entered: 02/22/2024) |
| 02/23/2024 | 76 | NOTICE OF DOCKET ENTRY CORRECTION re: 75 Response in Opposition to 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. Exhibits A, B and C have been replaced to remove the illegible duplicate pdf header(s). The corrected documents are now attached to 75 and this entry. (Attachments: # 1 Exhibit B, # 2 Exhibit C) (law) (Entered: 02/23/2024) |
| 03/06/2024 | 77 | STIPULATED MOTION to Withdraw *Intervenor Department of Labor from this Action* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) (Entered: 03/06/2024) |
| 03/07/2024 | 78 | REPLY to Response to 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Ronald Martel, Michael McGuire, Arthur Provencher. (Attachments: # 1 Declaration of Scott A. Moriarity, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8)(Moriarity, Scott) Text clarified on 3/8/2024 (law). (Additional attachment(s) added on 3/8/2024: # 10 Index of Exhibits) (law). (Entered: 03/07/2024) |
| 03/08/2024 | 79 | NOTICE OF DOCKET ENTRY CORRECTION re: 78 Reply to Response to 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Ronald Martel, Michael McGuire, Arthur Provencher. The required Index of Exhibits was not included at the time of filing. The index is now attached to 63 and this entry. (law) (Entered: 03/08/2024) |
| 03/18/2024 | 80 | MOTION for Leave to File *Sur–Reply Brief in Further Opposition* as to 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A)(Rattigan, Elizabeth) Text/link clarified on 3/18/2024 (law). (Entered: 03/18/2024) |
| 03/25/2024 | 81 | STIPULATED MOTION for Protective Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Rattigan, Elizabeth) (Main Document 81 replaced and Additional attachment(s) added on 3/25/2024: # 1 Exhibit A) (law). (Entered: 03/25/2024) |
| 03/25/2024 | 82 | NOTICE OF DOCKET ENTRY CORRECTION re: 81 STIPULATED MOTION for Protective Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. All documents were uploaded as a singular PDF. The documents have been broken apart and are now separately attached to 81 and this entry. (Attachments: # 1 Exhibit A) (law) (Entered: 03/25/2024) |
| 03/26/2024 | 83 | RESPONSE in Opposition re 80 MOTION for Leave to File *Sur–Reply Brief in Further Opposition* as to 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Ronald Martel, Ronald Martel, Michael McGuire, Michael |

| | | McGuire, Arthur Provencher, Arthur Provencher. (DeMaris, Nicholas) (Entered: 03/26/2024) |
|---|---|---|
| 03/29/2024 | 84 | PROPOSED Order re 81 STIPULATED MOTION for Protective Order by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A)(Rattigan, Elizabeth) (Entered: 03/29/2024) |
| 03/29/2024 | 85 | MOTION for Oral Argument re 63 MOTION for FLSA Conditional Certification *and Judicial Notice* filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Rattigan, Elizabeth) Text clarified on 4/1/2024 (law). (Entered: 03/29/2024) |
| 03/29/2024 | 86 | STIPULATED PROTECTIVE ORDER re: 81 Stipulated Motion for Protective Order. Signed by Judge William K. Sessions III on 3/29/2024. (law) (Main Document 86 replaced and Additional attachment(s) added on 4/1/2024: # 1 Exhibit A) (law). (Entered: 04/01/2024) |
| 04/01/2024 | 87 | NOTICE OF DOCKET ENTRY CORRECTION re: 86 Stipulated Protective Order. The main document and Exhibit A were uploaded as a singular PDF. The documents have been broken apart and are now separately attached to 86 and this entry. (Attachments: # 1 Exhibit A) (law) (Entered: 04/01/2024) |
| 04/01/2024 | 88 | MOTION to Dismiss *Plaintiff Ronald Martel Voluntarily* filed by Ronald Martel. (Attachments: # 1 Proposed Order)(Moriarity, Scott) (Entered: 04/01/2024) |
| 04/02/2024 | 89 | OPINION AND ORDER **granting subject to conditions** 63 Motion for FLSA Conditional Certification *and Judicial Notice*; **granting** 80 Motion for Leave to File *Sur−Reply Brief in Further Opposition* as to 63 Motion for FLSA Conditional Certification *and Judicial Notice*; **denying** 85 Motion for Oral Argument re: 63 Motion for FLSA Conditional Certification *and Judicial Notice*. Bimbo must provide Plaintiffs' counsel with names, dates of employment, addresses, and email addresses of the members within 30 days. Signed by Judge William K. Sessions III on 4/2/2024. (law) (Entered: 04/02/2024) |
| 04/18/2024 | 90 | MOTION for Certificate of Appealability re: 89 Opinion and Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Memorandum in Support)(Rattigan, Elizabeth) Event/text clarified on 4/18/2024 (law). (Entered: 04/18/2024) |
| 04/18/2024 | 91 | PROPOSED Order re 90 MOTION for Certificate of Appealability re: 89 Opinion and Order by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) (Entered: 04/18/2024) |
| 04/18/2024 | 92 | EMERGENCY MOTION to Stay re 89 Opinion and Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Proposed Order) Text clarified on 4/18/2024 (law). (Attachment 2 replaced on 4/18/2024) (law). (Entered: 04/18/2024) |
| 04/18/2024 | 93 | NOTICE OF DOCKET ENTRY CORRECTION re: 92 EMERGENCY MOTION to Stay re: 89 Opinion and Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. Exhibit A has been replaced to remove the eligible PDF header. The corrected document is now attached to 92 and this entry. (law) (Entered: 04/18/2024) |
| 04/22/2024 | 94 | ORDER granting 77 STIPULATED MOTION to Withdraw Intervenor Department of Labor from this Action. Signed by Judge William K. Sessions III on 4/22/2024. (This is a text−only Order.) (eae) (Entered: 04/22/2024) |
| 04/25/2024 | 95 | MOTION for Protective Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC (Attachments: # 1 Memorandum in Support, # 2 Proposed Order)(Rattigan, Elizabeth) (Entered: 04/25/2024) |
| 04/29/2024 | 96 | LETTER re: 92 EMERGENCY MOTION to Stay re: 89 Opinion and Order by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) Text clarified on 4/29/2024 (law). (Entered: 04/29/2024) |
| 05/02/2024 | 97 | ORDER granting 92 Emergency Motion to Stay re 89 Opinion and Order. Signed by Judge William K. Sessions III on 5/2/2024. (law) (Entered: 05/02/2024) |

| 05/02/2024 | 98 | MEMORANDUM in Opposition re: 90 MOTION for Certificate of Appealability re: 89 Opinion and Order by Michael McGuire, Arthur Provencher. (Moriarity, Scott) (Entered: 05/02/2024) |
|---|---|---|
| 05/09/2024 | 99 | MEMORANDUM in Opposition re: 95 MOTION for Protective Order by Michael McGuire, Arthur Provencher. (Attachments: # 1 Declaration of Scott Moriarity, # 2 Exhibit A, # 3 Exhibit B)(Moriarity, Scott) (Entered: 05/09/2024) |
| 05/15/2024 | 100 | REPLY to Response to 90 MOTION for Certificate of Appealability re: 89 Opinion and Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Rattigan, Elizabeth) Text clarified on 5/15/2024 (law). (Entered: 05/15/2024) |
| 05/20/2024 | 101 | REPLY to Response to 95 MOTION for Protective Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Rattigan, Elizabeth) Text clarified on 5/20/2024 (law). (Entered: 05/20/2024) |
| 06/03/2024 | 102 | OPINION AND ORDER granting 88 Motion to Dismiss *Plaintiff Ronald Martel Voluntarily*; granting 90 Motion for Certificate of Appealability re: 89 Opinion and Order. Signed by Judge William K. Sessions III on 6/3/2024. (law) (Entered: 06/03/2024) |
| 07/01/2024 | 103 | ORDER: In light of the pending appeal, the 95 MOTION for Protective Order is denied without prejudice. (This is a text–only Order.)Signed by Judge William K. Sessions III on 7/1/2024. (eae) (Entered: 07/01/2024) |
| 08/01/2024 | 104 | MOTION for Status Conference or Case Management Order filed by Michael McGuire, Arthur Provencher. (Moriarity, Scott) (Entered: 08/01/2024) |
| 08/15/2024 | 105 | RESPONSE in Opposition re 104 MOTION for Status Conference or Case Management Order filed by Bimbo Bakeries USA, Inc., Bimbo Foods Bakeries Distribution, LLC. (Engelman, Keri) (Entered: 08/15/2024) |
| 08/22/2024 | 106 | ORDER denying 104 Motion for Status Conference or Case Managment Order. Signed by Judge William K. Sessions III on 8/22/2024. (This is a text–only Order.) (eae) (Entered: 08/22/2024) |
| 12/04/2024 | 107 | ORDER of USCA (24–1601) granting leave to appeal an interlocutory order as to 89 and 102 Opinion and Orders. (law) (Entered: 12/04/2024) |
| 12/05/2024 | | USCA Appeal Fee received $605, receipt no. 4752, Circuit No. 24–1601, re: 107 USCA Order. (kac) (Entered: 12/05/2024) |

D. Vt.
22-cv-198
Sessions, J.

# United States Court of Appeals
#### FOR THE
#### SECOND CIRCUIT
_____

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26ᵗʰ day of November, two thousand twenty-four.

Present:

Guido Calabresi,
Sarah A. L. Merriam,
    *Circuit Judges,*
Jed S. Rakoff,
    *District Judge.*\*

_____

Bimbo Bakeries USA, Inc., et al.,

        *Petitioners,*

    v.                                  24-1601

Arthur Provencher, individually and on
behalf of all similarly situated individuals, et al.,

        *Respondents.*

_____

Petitioners' motion to file a reply and respondents' motion to file a sur-reply are both GRANTED.

Petitioners request, under 28 U.S.C. § 1292(b), leave to appeal an interlocutory order of the district court. Upon due consideration, it is hereby ORDERED that the petition is GRANTED. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 23–25 (2d Cir. 1990).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



_____

\* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ARTHUR PROVENCHER, MICHAEL          :
McGUIRE and RONALD MARTEL,          :
on behalf of a class,               :
                                    :
        Plaintiffs,                 :
                                    :
v.                                  :    Case No. 2:22-cv-198
                                    :
BIMBO BAKERIES USA, INC. and BIMBO :
FOODS BAKERIES DISTRIBUTION LLC,    :
                                    :
        Defendants.                 :

## OPINION AND ORDER

Plaintiffs Arthur Provencher, Michael McGuire, and Ronald Martel filed a motion for conditional collective action certification and judicial notice under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1); 216(b). ECF No. 63. Defendant Bimbo Bakeries opposes the motion. ECF No. 75. For the following reasons, the Court **grants** Plaintiffs' motion to conditionally certify the FLSA collective action and issue notice subject to certain modifications.

## BACKGROUND

The factual and procedural history of this case has been detailed in the Court's prior orders, and the Court assumes the parties' familiarity with those facts. In brief, Plaintiffs

Provencher, McGuire, and Martel[1] filed this lawsuit on behalf of a putative class and collective of similarly situated individuals ("Distributors") who deliver and stock baked goods in grocery stores and other retail establishments on behalf of Bimbo Bakeries USA ("Bimbo") and its corporate affiliate. ECF No. 1 at 1-2. Bimbo, a corporate wholesale bakery, develops, bakes, and distributes bakery and snack food products to retail customers. *Id.* at 4. Which party is ultimately responsible for product distribution, and the resulting pay structure, is the subject of this lawsuit. The Complaint alleges that Bimbo and its corporate affiliate misclassified Plaintiffs as independent contractors while they were, in fact, employees. *Id.* at 8.

Distributors filed a complaint on October 28, 2022. ECF No. 1. On January 23, 2023, Bimbo filed an answer denying most of Distributors' allegations and asserting a counterclaim arguing

---

[1] In a footnote of their reply brief, Plaintiffs' counsel states that it has "determined that Plaintiff Ron Martel cannot proceed with his FLSA claim. With Mr. Martel's consent, Plaintiffs will be diligently proceeding with his voluntary dismissal from the action." ECF No. 78 at 13. Plaintiffs nonetheless assert that the Court should consider Mr. Martel's deposition testimony because "his experience of the economic realities of working for Bimbo are still germane to the issues in this case." *Id.* Mr. Martel has not yet filed a motion for dismissal. Bimbo filed a brief urging the Court to disregard Martel's testimony in evaluating Plaintiffs' motion. ECF No. 80-1 at 2. Because the Court concludes that Plaintiffs have satisfied their showing for conditional certification with or without Mr. Martel's testimony, it will not rely on that testimony for resolution of the issue.

that if the Court found Distributors to be employees under
Vermont labor law, Bimbo should be entitled to restitution for
benefits bestowed upon Distributors by virtue of their nominal
status as independent contractors. ECF No. 18 at 24.  The
Department of Labor ("DOL") intervened for the limited purpose
of opposing the counterclaim and both Plaintiffs and DOL filed
motions to dismiss. ECF Nos. 27 (DOL's motion to intervene); 31
(Plaintiffs' motion to dismiss counterclaim); 44 (DOL's motion
to dismiss counterclaim). The Court found that Bimbo's
counterclaim was preempted by the FLSA and granted those
motions. ECF No. 58. It also denied Bimbo's motion for judgment
on the pleadings. *Id.*

The parties conferred on a discovery schedule but disagreed
on various details and requested that the Court hold a Rule 16
conference to resolve those disputes. ECF No. 61. Shortly
thereafter, Plaintiffs filed a motion for conditional
certification of a collective action. ECF No. 63. Two of the
central discovery issues were (1) whether to phase discovery to
first focus on information relevant to collective action
certification and (2) whether to set discovery and dispositive
motions deadlines or wait for the Court's ruling on the
certification issue. ECF No. 61.

The Court held a Rule 16 conference on February 12, 2024.
Bimbo's counsel informed the Court that the phased discovery

3

issue had been resolved because Bimbo was able to get the discovery that it needed in order to oppose the certification motion. ECF No. 74 at 4. The Court declined to set discovery and motions deadlines until after the issuance of this Order. ECF No. 74 at 16. Plaintiffs' motion for conditional certification of a collective action is now ripe.[2]

## DISCUSSION

### A. Legal Standard

Plaintiffs have filed a motion for conditional certification of a collective action. Class and collective actions are different. In a class action filed pursuant to Federal Rule of Civil Procedure 23, class members may generally opt out. *See In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996). An FLSA collective action, on the other hand, requires similarly situated plaintiffs to affirmatively opt into litigation by filing their written consent with the court. 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly

---

[2] Bimbo also filed a motion for leave to file a sur-reply brief in further opposition to Plaintiffs' motion for conditional certification. ECF No. 80. It attached a copy of its proposed brief to the motion. ECF No. 80-1. The Court reviewed the motion to file a sur-reply brief, Plaintiffs' opposition to that motion, and the brief itself. Bimbo's motion to file a sur-reply brief is granted.

situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

The Second Circuit recently explained that § 216(b) is not a "mere procedural mechanism" for claim unification but instead confers a "right [to] any employee to become a party to" an action against an employer, "so long as certain preconditions are met." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (citing 29 U.S.C. § 216(b); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that Congress gave employees the "right" to proceed collectively)); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("[U]nlike a Rule 23 class, a conditionally certified FLSA collective does not acquire an independent legal status."). The primary "precondition" to proceeding collectively is that the named plaintiffs must be "similarly situated" to the opt-in plaintiffs. 29 U.S.C. § 216(b). The Second Circuit has outlined a "two-step process for certifying FLSA collective actions based on the 'similarly situated' requirement." *Scott*, 954 F.3d at 515.

> At step one, the district court permits a notice to be sent to
> potential opt-in plaintiffs if the named plaintiffs make a
> modest factual showing that they and others together were
> victims of a common policy or plan that violated the law. At
> step two, with the benefit of additional factual development,

5

the district court determines whether the collective action
may go forward by determining whether the opt-in plaintiffs
are in fact similarly situated to the named plaintiffs.

*Id.* (quoting *Glatt*, 811 F.3d at 540).

The first step is a preliminary determination in which the
court decides, "based on the plaintiffs' pleadings and
affidavits, whether the plaintiffs and potential opt-in
plaintiffs are sufficiently 'similarly situated' to issue notice
and allow the case to proceed as a collective action through
discovery." *Rodney v. Casella Waste Sys., Inc.*, No. 2:21-CV-
00196, 2023 WL 313929, at *4 (D. Vt. Jan. 19, 2023) (citing
*Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368
(S.D.N.Y. 2007)) (cleaned up). To be "similarly situated,"
plaintiffs and opt-in plaintiffs must "share a similar issue of
law or fact material to the disposition of their FLSA claims."
*Scott*, 954 F.3d at 516 (citing *Campbell v. City of Los Angeles*,
903 F.3d 1090, 1114 (9th Cir. 2018)). If plaintiffs and opt-in
plaintiffs share legal or factual similarities relevant to their
FLSA claims, "dissimilarities in other respects should not
defeat collective treatment." *Id.*[3] The Supreme Court has

---

[3] Bimbo's sur-reply brief argues that *Scott* is inapplicable
because it dealt with step two of the conditional certification
process. ECF No. 80-1 at 4. While this is true, *Scott*
nonetheless provides guidance on relevant considerations in
evaluating the "similarly situated" requirement. 954 F.3d at
521. Bimbo is correct that *Scott* does not purport to overrule
*Glatt*, *Myers*, or other step one certification cases, and does

explained that the "similarly situated" provision seeks to allow the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" FLSA violation. *Scott*, 954 F.3d at 516 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).[4]

Courts in this Circuit have explained that plaintiffs can satisfy their step one burden through a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."[5] *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 345 (E.D.N.Y. 2012) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). In an FLSA exemption case, plaintiffs accomplish this by showing that other employees "are similarly situated with respect to their job requirements and with regard to their pay provisions," and "who

---

not support the notion that the mere fact of misclassification satisfies the "similarly situated" requirement.

[4] The Court notes that while this process is often referred to as "certification," it is not certification in the Rule 23 sense. In FLSA collective action cases, opt-in plaintiffs join the case as party plaintiffs. *See Errickson v. Paychex*, Inc., 447 F. Supp. 3d 14, 20 (W.D.N.Y. 2020).

[5] Bimbo's sur-reply brief argues that Plaintiffs mischaracterize *Scott* for the premise that "the conditional certification standard [ ] requires certification of any collective action alleging uniform misclassification." ECF No. 80-1 at 3 (citing ECF No. 78 at 11-12). The Court agrees that *Scott* does not require conditional certification of any action alleging uniform misclassification; Plaintiffs must show additional facts to support certification beyond the simple fact of alleged misclassification.

are classified as exempt pursuant to a common policy or scheme."
*Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citing
*Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th
Cir. 2008)). This modest factual showing cannot be satisfied via
"unsupported assertions," but is a forgiving standard of proof
because the purpose of this first stage is merely to determine
whether "similarly situated" plaintiffs do in fact exist. *Id.*
(quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d
1562, 1567 (11th Cir. 1991)). During this initial determination
the Court will not "resolve factual disputes, decide substantive
issues going to the ultimate merits, or make credibility
determinations," and "any factual variances that may exist
between the plaintiff and the putative class do not defeat
conditional class certification." *Rodney*, 2023 WL 313929 at *4
(quoting *Lynch*, 491 F. Supp. 2d at 368-69).

The second step occurs after discovery. The Court will then
examine the record and make a "factual finding regarding the
similarly situated requirement; if the claimants are similarly
situated, the collective action proceeds to trial, and if they
are not, the class is decertified, the claims of the opt-in
plaintiffs are dismissed without prejudice, and the class
representative may proceed on his or her own claims." *Lee v. ABC
Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

**B. Analysis**

Plaintiffs propose that the collective be defined as follows:

> All persons who are performing or have performed work as Distributors for Bimbo Bakeries USA and/or Bimbo Foods Bakeries Distribution LLC in the States of Connecticut, New York, or Vermont under a distributor agreement during the period commencing three years prior to the filing of the Complaint until the court-ordered deadline for such persons to opt into this case.[6]

ECF No. 63-1 at 4. Plaintiffs assert that Bimbo produces and distributes baked goods to retailers around the northeast using a network of warehouses and distributors.[7] They allege that Bimbo negotiates directly with retailers to set prices, allocate shelf space, and select products, which ties Distributors' income to Bimbo's actions. *Id.* at 3. Plaintiffs state that Distributors across Vermont, Connecticut, and New York are similarly situated with regard to their lack of control over business operations and profit margins, and that none receive overtime compensation despite "routinely work[ing] more than 40 hours per week." *Id.* at 4. They submit that Bimbo "uniformly requires Distributors to agree to its Distributor Agreement." *Id.* at 7.

Bimbo raises several objections to conditional certification of the collective action.

---

[6] Bimbo's briefing indicates that this proposed collective comprises 654 distributors. ECF No. 75 at 8.
[7] Bimbo refers to these as Independent Business Partners ("IBPs"). ECF No. 75 at 8. The Court will call them distributors without implying any legal judgment as to their employment status.

### 1. Personal Jurisdiction

Bimbo asserts that the Court should exclude distributors based in New York and Connecticut from conditional certification because the Court "lacks personal jurisdiction over the claims of IBPs outside of Vermont." ECF No. 75 at 22. Even in a federal question case, a federal court will apply the forum state's personal jurisdiction rules if "the federal statute does not specifically provide for national service of process." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). The FLSA does not provide for national service of process. *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019) (citing *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992)). Vermont's long arm statute authorizes the service of process (and therefore the exercise of jurisdiction) over out-of-state defendants "to the full extent permitted by the federal Due Process Clause." *State v. Atl. Richfield Co.*, 2016 VT 22 ¶ 10 (cleaned up) (citing 12 V.S.A. § 913). Therefore, the question is whether the Due Process Clause allows this Court to exercise jurisdiction over the claims of Distributors outside of Vermont.[8]

---

[8] There is a circuit split on this question. *Compare Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) *with Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 398 (6th Cir.

Supreme Court decisions have recognized two types of personal jurisdiction: "'general' (sometimes called "all-purpose") jurisdiction and 'specific' (sometimes called "case-linked") jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Vermont is not Bimbo's principal place of business nor place of incorporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (citing Lea Brilmayer et al., *A General Look at General Jurisdiction*, 66 TEXAS L. REV. 721, 728 (1988)). Consequently, Bimbo is not "fairly regarded as at home" in Vermont and the Court does not have general jurisdiction over the claims of out-of-state opt-in plaintiffs. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

To establish specific jurisdiction, "a defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). When evaluating personal jurisdiction, a court must determine both "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction

---

2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865-66 (8th Cir. 2021); *see also* Adam Drake, *The FLSA's Bristol-Myers Squibb Problem*, 89 FORDHAM L. REV. 1511 (2021).

over the defendant" and "whether the assertion of personal
jurisdiction over the defendant comports with 'traditional
notions of fair play and substantial justice' under the
circumstances of the particular case." *Waldman v. Palestine
Liberation Org.*, 835 F.3d 317, 326 (2d Cir. 2016) (quoting
*Daimler*, 571 U.S. at 126). Relevant considerations include "the
interests of the forum State and of the plaintiff in proceeding
with the cause in the plaintiff's forum of choice," *Kulko v.
Superior Court of Cal., City and County of San Francisco*, 436
U.S. 84, 92 (1978), and "the burden on the defendant." *World-
Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The
latter factor involves "practical problems resulting from
litigating in the forum" and the "more abstract matter of
submitting to the coercive power of a State that may have little
legitimate interest in the claims in question." *Bristol-Myers
Squibb Co.*, 582 U.S. at 263.

In *Bristol-Myers Squibb Co.*, the Supreme Court evaluated
the outer boundaries of specific jurisdiction in state court
cases involving issues of state law that extend across state
lines. In that case, 86 California residents and 592 residents
of other states filed eight separate lawsuits in California
Superior Court asserting 13 state law claims against Bristol-
Myers Squibb ("BMS"), a large pharmaceutical company. *Id.* at
259. The nonresident plaintiffs did not have any ties to

California and while BMS sold the allegedly dangerous drug in California, it did not manufacture, package, or conduct other business activities in the state. The California Supreme Court applied a "sliding scale approach to specific jurisdiction" and found that "BMS' extensive contacts with California" permitted the exercise of specific jurisdiction notwithstanding a less direct connection between BMS' forum activities and the out-of-state plaintiffs' claims. *Id.* at 260.

The Supreme Court rejected this approach, explaining that "a defendant's general connections with the forum are not enough" to authorize a state court to exercise specific jurisdiction over state law claims of out-of-state plaintiffs. *Id.* at 264. The Fourteenth Amendment's Due Process "limits the power of a state court to render a valid personal judgment against a nonresident defendant," *id.* at 261-62 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 291), and "[w]hat is needed . . . is a connection between the forum and the specific claims at issue." *Id.* at 265. The Court concluded that because the relevant plaintiffs were not California residents, did not suffer harm in that state, and did not purchase or consume the drug in that state, "the California courts cannot claim specific jurisdiction." *Id.* at 265. However, the Court left open whether "the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at

269 (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484
U.S. 97, 102 (1987)).

The Court concludes that it has jurisdiction over the
claims of putative class members located in New York and
Connecticut. Federal Rule of Civil Procedure 4(k) outlines the
territorial limits over where a federal court may serve a
summons. *See Walden*, 571 U.S. at 283 ("[A] federal district
court's authority to assert personal jurisdiction in most cases
is linked to service of process on a defendant."). Rule
4(k)(1)(A) establishes that a court may establish jurisdiction
over a defendant who is "subject to the jurisdiction of a court
of general jurisdiction in the state where the district court is
located." As noted above, Vermont state courts may exercise
jurisdiction over nonresident defendants to the "full extent
permitted by the federal Due Process Clause." Therefore, this
Court may too.

Bimbo does not dispute that this Court has personal
jurisdiction over the claims brought by Vermont Distributors.
Bimbo had sufficient contact with Vermont to be subject to the
jurisdiction of its state courts, and therefore this Court. And
once a defendant is properly in federal court for an alleged
violation of a federal statute, that federal statute (and the
due process clause) governs the parameters of that lawsuit. The
FLSA provides that an allegedly wronged employee may initiate an

action against the employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The collective action provision clearly indicates Congressional intent to consolidate and standardize FLSA litigation – provided that the employer-defendant has been constitutionally haled into a "court of competent jurisdiction" in the first place. *Id.; see also Waters*, 23 F.4th at 96-97 (explaining that "the FLSA and its legislative history show that Congress created the collective action mechanism to enable all affected employees working for a single employer to bring suit in a single, collective action."); *Hoffmann-La Roche*, 493 U.S. at 170 ("A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

Unlike in *Bristol-Myers Squibb*, subjecting Bimbo to personal jurisdiction in Vermont for alleged FLSA violations does not allow plaintiffs to avail themselves of the laws of a state that the defendant did not expect. The out-of-state plaintiffs in *Bristol-Myers Squibb* had no connection to California law, and BMS had no way of anticipating that drug users in Texas would assert violations of California law in California state courts. Without the putative mass tort action

at issue in that case, it would have been impossible for those Texas residents to sue BMS for violating California law at all. Here, though, plaintiffs have properly haled Bimbo into federal court in Vermont for an alleged violation of federal law. They now seek to join out-of-state distributors in the action for violations of the same law – a law that Bimbo knew applied in New York and Connecticut as well as in Vermont. In other words, allowing personal jurisdiction over out-of-state claims in FLSA collective action cases does not present the same concern over choice-of-law shopping as *Bristol-Myers Squibb.*

The factors underlying personal jurisdiction analysis support this conclusion. Plaintiffs obviously have an interest in proceeding with the cause in their forum of choice. *Kulko*, 436 U.S. at 92. But the primary concern is the burden on the defendant. *Bristol-Myers Squibb*, 582 U.S. at 263. Forcing Bimbo to litigate an interstate collective action in Vermont federal district court may be logistically inconvenient, but Bimbo has not disputed that the Court has valid personal jurisdiction over it with regard to the claims brought by Vermont distributors. The added burden associated with allowing out-of-state claims is marginal (and may ultimately reduce litigation costs).

The *Bristol-Myers Squibb* Court explained that considering the burden on the defendant "also encompasses the more abstract matter of submitting to the coercive power of a State that may

16

have little legitimate interest in the claims in question." *Id.*
This federalism interest "may be decisive." *Id.* The federalism
concerns at play here are substantially different from those in
*Bristol-Myers Squibb.* This case does not require consideration
of the competing interests of different states in applying their
own laws. There is no dispute that Bimbo is governed by the FLSA
nationwide. The question of where it must litigate its
compliance with federal standards is much different from the
question of whether a defendant must defend itself against state
law claims altogether.

Accordingly, the Court has personal jurisdiction over the
putative collective members outside of Vermont.

## 2. The FLSA's "Similarly Situated" Requirement

Because the Court has jurisdiction over putative out-of-
state plaintiffs' claims, it must evaluate whether those
plaintiffs are sufficiently "similarly situated" to the Vermont
Distributors to warrant collective action certification. As
explained above, this is a preliminary determination that
requires plaintiffs to make a "modest showing" that plaintiffs
and opt-in plaintiffs "share a similar issue of law or fact
material to the disposition of their FLSA claims." *Scott*, 954
F.3d at 516; *Neff v. Flower Foods, Inc.*, No. 5:15-CV-254, 2016
WL 11808327, at *2 (D. Vt. Nov. 7, 2016). While this modest
factual showing cannot be satisfied by unsupported assertions or

conclusory allegations, it remains "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 717CV03556NSRJCM, 2019 WL 1417125, at *2 (S.D.N.Y. Mar. 29, 2019) (quoting *Myers*, 624 F.3d at 555).[9]

Each Distributor has entered into a Distribution Agreement ("DA") with Bimbo that identifies the Distributor as an independent contractor. ECF No. 78 at 4 ("Bimbo uniformly classifies all its Distributors as independent contractors instead of employees."); ECF No. 75 at 10 ("These IBPs entered into varying DAs with BFBD or its varying affiliates.").[10] Each

---

[9] The Second Circuit employs the "economic reality test" to determine whether individuals are properly characterized as independent contractors or employees. *See, e.g., Saleem v. Corporate Transp. Grp. Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017). This is a fact-specific inquiry grounded in "economic reality rather than technical concepts," *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008), and the ultimate question is whether "the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988). Any merits decision on the economic reality would be premature, so the Court will focus solely on whether plaintiffs are similarly situated to one another in relation to their shared employer (Bimbo).

[10] Bimbo asserts that these DAs "vary materially" and come in "at least ten different forms." ECF No. 75 at 10. As the District of New Hampshire noted in *Camp v. Bimbo Bakeries USA, Inc.*, "the court need not resolve whether there are, indeed, material differences in those agreements [at this phase of the litigation]. That matter can be addressed at the next stage when, presumably, defendants will move to 'decertify' the

DA grants a Distributor exclusive distribution rights over a particular geographic area. Some Distributors may hire others to conduct all or part of the work for them, *see* ECF No. 75-7 at 3 (one distributor hired "around 25 employees"), and some may have the right to sell their territory to someone else. *See* ECF No. 75-6 at 3. It is undisputed that Bimbo does not pay overtime to any Distributors.

Plaintiffs allege that they and opt-in plaintiffs are similarly situated because both must deliver Bimbo's products on terms set by Bimbo. ECF No. 63-1 at 3. The parties vigorously dispute whether Bimbo has control over Distributors' work. *Compare* ECF No. 75 at 16 ("[O]ther IBPs solely determine the amount of product they order and have not experienced anyone changing their order.") *with* ECF No. 78 at 5 (describing Plaintiffs' "inability to control product orders or pricing."). Distributors' control over their resale terms, ordering schemes, and distribution pattern impacts whether they are properly classified as independent contractors or employees under the FLSA. The Court concludes that deposition testimony from two named plaintiffs indicates that Bimbo exercised at least some level of control over the manner in which Distributors conducted their business operations. *See, e.g.*, ECF No. 78-2 at 17

_____

collective." No. 18-CV-378-SM, 2019 WL 440567, at *2 n.1. (D.N.H. Feb. 4, 2019)

(Provencher deposition stating that Bimbo took control over "every aspect of the business."); *id.* at 135 (stating that Distributors do not negotiate prices with chain stores); ECF No. 78-3 at 179 (McGuire deposition stating that "for chain stores, there's not much I can do [to maximize sales] other than fill in the area that is designated to me and keep it full."); *id.* at 385 (noting that Bimbo negotiated terms with one chain in particular).[11]

Additionally, the simple fact that each DA identifies Distributors as independent contractors counsels in favor of certifying the collective action. *Scott v. Bimbo Bakeries, USA, Inc.*, No. CIV.A. 10-3154, 2012 WL 645905, at *8 (E.D. Pa. Feb. 29, 2012). This is because overarching classification serves as evidence of a common policy with regard to the members of that classification – one that may violate the law. *See* ECF No. 58. And another important manner in which Distributors are similarly situated is with reference to overtime pay; specifically, that

---

[11] These depositions also indicate that Distributors made key independent determinations regarding how to conduct their operations. *See, e.g.,* ECF No. 78-2 at 30 (Provencher stating that he coordinated a promotion without Bimbo's involvement); *id.* at 32 (Provencher stating that he is able to override Bimbo's pre-programmed order numbers); ECF No. 78-3 at 289 (McGuire stating that he is able to change pre-programmed sales quantities). Again, the Court is not evaluating the merits of the economic reality test at this stage of the litigation; it is sufficient for Plaintiffs to show that they were similarly situated to one another in a manner material to the merits of the FLSA claim. They have satisfied that burden here.

none of them receive it. While this may be perfectly innocuous, it is a shared characteristic relevant to the ultimate FLSA determination.

Several other courts have conditionally certified collective actions when plaintiffs have alleged that Bimbo required them to service non-profitable customers. *See Camp*, 2019 WL 440567, at *2 (citing *Scott,* 2012 WL 645905); *Tate v. Bimbo Bakeries USA, Inc.*, No. 218CV02315MSNTMP, 2019 WL 13156689, at *3 (W.D. Tenn. June 24, 2019) (noting that plaintiffs submitted evidence of Bimbo's substantial control over their work). These allegations are mirrored in plaintiffs' Deposition testimony. Distributors specifically state that Bimbo negotiated terms with chain accounts, and that even if those accounts were not profitable, they were not allowed to cease servicing them. ECF No. 78-4 at 158; ECF No. 78-2 at 132 (explaining that Provencher wanted to stop servicing one store but was "pushed back with the threat of breach.").

This court has conditionally certified collective actions in cases similar to this one. In *Neff v. Flower Foods,* the District of Vermont concluded that route drivers who all signed "similar distribution agreements" and did not receive overtime payments were similarly situated for purposes of FLSA conditional certification. 2016 WL 11808327 at *3. It also explained the question of "whether the drivers [were] self-

employed" went to the "merits of the claim and [did] not disqualify Plaintiffs from seeking to form a [collective action] . . . [i]t is sufficient to demonstrate that they have been treated alike by the same employer for similar reasons." *Id.* Other federal courts reached the same result with respect to comparable Bimbo distributors around the country. *See, e.g., Camp*, 2019 WL 440567, at *5; *Scott*, 2012 WL 645905, at *10; *Tate*, 2019 WL 13156689, at *7; *Mejia v. Bimbo Bakeries USA, Inc.*, No. CV-16-00654-TUC-JAS, 2017 WL 6415357, at *5 (D. Ariz. Aug. 14, 2017); *Franze*, 2019 WL 1417125, at *4; *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-CV-02324-RBJ, 2017 WL 3190605, at *1 (D. Colo. July 19, 2017). While these cases do not control the outcome here, they provide support for the notion that Bimbo distributors can be considered "similarly situated" for conditional FLSA collective action certification purposes.

Bimbo argues that the named Plaintiffs lack knowledge of the terms of other DAs and do not know about Bimbo's practices in other states. ECF No. 75 at 4. But express knowledge of distributors in other locations is not necessary for conditional certification of a collective action so long has the plaintiff has provided evidence indicating that putative opt-in plaintiffs "share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516; *Tate,*

2019 WL 13156689, at *4 (certifying collective despite Bimbo's argument that plaintiffs "do not have express knowledge of a specific distributor in other locations").

Additionally, cases declining to conditionally certify FLSA collective actions for lack of knowledge of similarly situated plaintiffs generally involve sole plaintiffs without *any* information regarding other group members. *See Tate*, 2019 WL 13156689, at *5-*6 (citing *Sutka v. Yazaki N. Am., Inc.*, No. 17-10669, 2018 WL 1255767, at *12 (E.D. Mich. Mar. 12, 2018)); *Gaffers v. Sitel Worldwide Corp.*, No. 3-16-0128, 2016 WL 3137726 (M.D. Tenn. June 6, 2016). Here, Bimbo argues that named plaintiffs have no knowledge of Bimbo's business practices outside of the Sales Center located in Williston, Vermont. ECF No. 75 at 11. Bimbo is correct that the deposition testimony indicates limited knowledge of other distributors, but it also reveals knowledge of what Plaintiffs perceive to be Bimbo's standard business practices. *See* ECF No. 78-2 at 40-42 (Bimbo introduced a new ordering system in 2022 that occasionally would not allow Provencher to change orders); 58, 137 (Provencher has no power to change certain prices); 146 ("[T]here are performance standards. I've seen people breached out of their route for not performing."); ECF No. 78-3 at 162 (McGuire told by other distributors that "Bimbo negotiates the prices to pay on what they sell, and I only get a percentage of that."); 345

(McGuire stating "I don't believe they [other distributors] do anything different than I do."). Plaintiffs' depositions also reveal common experience with Bimbo's ordering systems and distribution of "playbooks" that include "mandated" terms for servicing chain stores. *See* ECF No. 78-2 at 220 (describing chain playbooks and disclaiming input or control over terms) ECF No. 78-6 at 4 (Bimbo Hannaford manual stating "Displays Mandated").

Finally, while not dispositive, it is worth noting that judicial efficiency counsels in favor of issuing notice to individuals with arbitration agreements. As the District of Connecticut noted in an unrelated case, "previous litigation is extremely probative of the question under discussion. The fact that other individuals already have brought similar claims shows that there are, in fact, others who have asserted . . . experiences like Plaintiff's." *Headly v. Liberty Homecare Options, LLC*, No. 3:20-CV-00579 (OAW), 2022 WL 2181410, at *7 (D. Conn. June 16, 2022). Rather than wait for these claims to be brought on a piecemeal basis, the Court concludes that it is worthwhile to consolidate the litigation in a single venue.

Finally, Bimbo argues that the Court should deny Plaintiffs' motion for conditional certification because Plaintiffs' declarations are ostensibly contradicted by their deposition testimony. ECF No. 75 at 8. In support, Bimbo cites

*Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 486 (S.D.N.Y. 2016). In that case, the Southern District of New York declined to conditionally certify a class in part because plaintiffs' deposition testimony conceded – contrary to their declarations – that they were actually paid for the overtime hours that they worked, which were the subject of the lawsuit in the first place. *Id.* at 486-87. Here, Bimbo points out that Plaintiff Martel "admitted that he has not worked 40 hours on his distribution business for years." ECF No. 75 at 13. This is a requirement for an unpaid overtime award and will likely vary from distributor to distributor. Whether each opt-in plaintiff actually worked more than 40 hours per week will be evaluated at the second step of the conditional certification process. *See* 29 U.S.C. § 207(a)(1). The other alleged falsehoods are not so egregious as Bimbo makes them out to be, and do not warrant dismissal or decertification at this stage.[12]

---

[12] For instance, Bimbo states that contrary to Plaintiffs' representations that the computerized ordering system tells them how much product to order and deliver, deposition testimony indicates that they have control over this process. This is not exactly true. While the deposition testimony is confusing and unclear, it seems that Plaintiffs' orders are at least occasionally overridden. *See* ECF No. 78-4 at 177 (stating several different ways in which orders will change including "[t]he computer system itself has the ability to override our orders."). Many of Bimbo's other complaints have to do with the terminology that Plaintiffs use to refer to their businesses. It notes that Plaintiff Provencher called his business a "route sales business" and referred to the customers as his own customers, not Bimbo's. ECF No. 75 at 14. Plaintiffs' deposition

The point of FLSA conditional certification is "simply to obtain judicial permission to notify other interested and similarly situated parties." *Tate*, 2019 WL 13156689 at *4. Defendants have submitted declarations indicating that at least some distributors exercise substantial control over their job functions, ECF Nos. 75-6, 75-7, and state that different distributors engage with their jobs in different ways, *see* ECF No. 75 at 15-19, but Plaintiffs have made their "modest showing" that distributors are similarly situated with regard to Bimbo's ordering process, pricing, and chain service requirements. Defendants may revisit this factual question upon a more developed record.

### 3. Exceptions

Bimbo next argues that even if the Court decides to conditionally certify the collective action, it should not issue notice to the 325 distributors with arbitration agreements in their DAs. ECF No. 75 at 22. This issue is percolating throughout the federal judiciary. *See Davis v. Dynata*, LLC, No.

---

terminology does not warrant dismissal of the case, and ultimately has little bearing on the economic realities test. Finally, Bimbo states that "Plaintiffs' declarations suggest they must and do perform all of the work on their distributorship businesses themselves" which is allegedly untrue. ECF No. 74 at 14. The declarations use the first person when referring to Plaintiffs' job responsibilities, but do not claim that Plaintiffs never enlist help. *See* ECF No. 63-3, 63-5, 63-7. Regardless, the relevance of delegating responsibilities is better litigated later.

3:22-CV-1062 (SVN), 2023 WL 6216809, at *18 (D. Conn. Sept. 25, 2023) (explaining that some courts err on the side of being overinclusive when sending notice to potential plaintiffs). "The Second Circuit has not spoken to the precise issue of whether notice may be sent to potential opt-in plaintiffs when a defendant asserts that such recipients signed arbitration agreements that make them ineligible to join a proposed collective." *Aboah v. Fairfield Healthcare Servs.*, Inc., 662 F. Supp. 3d 192, 211 (D. Conn. 2023). The Fifth, Sixth, and Seventh Circuits have held that – under certain circumstances – the existence of valid arbitration agreements will preclude issuance of judicial notice in an FLSA collective action. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019). The "weight of jurisprudence" among district courts in this Circuit, however, "favors erring on the side of being overinclusive when sending notice to potential plaintiffs." *Aboah*, 662 F. Supp. 3d at 211 (internal quotations omitted).

Notably, many of the Second Circuit cases declining to issue notice to individuals with arbitration agreements result from the courts' preliminary determinations that those arbitration agreements are valid and enforceable. *See, e.g.*, *Davis*, 2023 WL 6216809 at *8; *Guzman v. Three Amigos SJL Inc.*,

117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015) (declining to consider potential arbitration defense when defendants had not moved to compel arbitration). That is not the case here.[13] Bimbo has submitted the text of the arbitration agreements applicable to each of the 325 ostensibly bound distributors (along with their names), ECF No. 75-11 at 29, but has not moved the Court to compel arbitration – and more importantly, neither party has briefed whether these agreements are valid and enforceable. As the Sixth Circuit noted in its consideration of the issue, enforceability of an arbitration agreement is a difficult determination to make "in absentia" because it is a fact-specific issue. *Clark*, 68 F.4th at 1011; *see also Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL, 2019 WL 4493429, at *15 (S.D.N.Y. Sept. 9, 2019) ("[D]etermining the enforceability of an arbitration agreement is the type of fact-bound merits inquiry that should not take place at the first stage of the conditional collective action approval process.") (quotations omitted).

There is insufficient information on the question of enforceability for the Court to make this determination at this stage.[14] Consistent with standard practice in this Circuit, the

---

[13] Nor can it be, because those agreements are between defendants and parties not before the Court.

[14] At least one court has held that the mere existence of an arbitration agreement – without evaluating its enforceability –

Court will allow notice to be sent to putative plaintiffs with arbitration agreements. Bimbo may assert arbitration agreements as a reason for decertification at later stages of litigation. *Cf. Filho v. OTG Mgmt., LLC*, No. 19-CV-8287 (ALC)(SN), 2021 WL 1191817, at *7 (S.D.N.Y. Mar. 30, 2021).

Bimbo also seeks to exclude collective notice based on two additional FLSA exemptions. *See* ECF no. 75 at 29-30. These are "outside salesmen" and "motor carrier" exemptions. *See* 29 C.F.R. § 541.500(a)(1) (administrative guidance on the outside sales exemption); 29 C.F.R. § 782.2 (administrative guidance on the motor carrier exemption). But consideration of these exemptions requires initial determination of whether Plaintiffs were properly classified as independent contractors or employees. In *Sydney v. Time Warner Entertainment-Advance/Newhouse Partnership*, for instance, the defendant company conceded that plaintiffs were employees but argued that they were exempt from the FLSA's overtime requirements because of their "primary duty" as salesmen. No. 513CV286FJSTWD, 2021 WL 2662047, at *3

---

makes an FLSA plaintiff non-similarly situated for purposes of the conditional certification process. *Errickson*, 447 F. Supp. 3d at 27. The Court disagrees with this conclusion. The existence of an arbitration agreement goes to the availability of a remedy, not whether the plaintiff is similarly situated with regard to an employer who has allegedly treated it illegally. To hold otherwise would be contrary to the Second Circuit's guidance that "dissimilarities in other respects should not defeat collective treatment." *Scott*, 954 F.3d at 516.

(N.D.N.Y. Mar. 30, 2021), report and recommendation adopted, No. 513CV286FJSTWD, 2022 WL 474146 (N.D.N.Y. Feb. 16, 2022). Here, Bimbo denies that distributors are employees in the first place. As discussed above, Plaintiffs have provided sufficient evidence on this question to show that they and putative opt-in plaintiffs are similarly situated at least with regard to that threshold question. Further briefing and factual development on the outside sales and motor carrier exemptions may reveal that some or all plaintiffs should be exempted from the FLSA's requirements (or that the collective should be decertified), but the Court cannot make that conclusion at this stage. *Cf. Bracamontes*, 2017 WL 3190605, at *2 ("[D]efendant argues that it is clear that the 'outside sales' exemption to the FLSA applies and, therefore, that plaintiffs' FLSA claims are meritless. . . . I disagree. For starters, this seems like a "step two" inquiry."); *Scott*, 2012 WL 645905, at *10 (deferring consideration of FLSA exemptions to the second stage of conditional certification); *Tate*, 2019 WL 13156689, at *4 ("[I]t is not appropriate for this Court to determine substantive issues and issues of particular fact regarding each putative plaintiff's exemptions until the second phase of certification.").[15]

---

[15] Notably, Bimbo argues that plaintiffs "may" be subject to the motor carrier exemption "if" they are considered employees.

C. **Notice and the Statute of Limitations**

The Supreme Court has emphasized the "managerial responsibility" of district courts in issuing notice to potential plaintiffs in FLSA actions. *See Hoffman-La Roche*, 493 U.S. at 171-72. To ensure "timely, accurate, and informative" notice, the Court can resolve disputes about the content of the notice before it is issued. *Id.* at 172. Court-approved notice is proper in "appropriate cases," which lies within the discretion of district courts. *Lynch*, 491 F. Supp. 2d at 368.

Court-authorized notice is appropriate here. Because distributors have demonstrated a "factual nexus" that makes them similarly situated relative to Bimbo, facilitating collective action through judicial notice will allow plaintiffs "to lower individual costs" and will promote "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche*, 493 U.S. at 170. Additionally, as Plaintiffs note, the continued running of the statute of limitations counsels in favor of issuing notice to "prevent the continued erosion of these claims." *Lynch*, 491 F. Supp. 2d at 371; *McGlone v. Contract*

---

Because the threshold "employee" issue is an issue on which plaintiffs share a "similar issue of law or fact material to the disposition of their FLSA claims," the Court remains cognizant that "dissimilarities in other respects" – including exemption-related questions such as primary duties and the weight of the delivery vehicles – "should not defeat collective treatment." *Scott*, 954 F.3d at 516.

*Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012)
("Normally in an FLSA collective action, the statute of
limitations for each plaintiff runs when he or she files written
consent with the court electing to join the lawsuit, not when
the named plaintiff files the complaint.") (citing 29 U.S.C. §
256(b)).

Plaintiffs have requested that the Court equitably toll the
statute of limitations "for the duration of the conditional
certification proceedings." ECF No. 63-1 at 9. A court may, in
its discretion, equitably toll the limitations period in
appropriate cases in order to avoid inequitable circumstances
when (1) extraordinary circumstances prevented plaintiff from
timely filing his or her claim and (2) the plaintiff pursued his
or her claim with reasonable diligence during the requested
period. *King v. Fedcap Rehab. Servs., Inc.*, No. 20-CV-1784
(VSB), 2022 WL 292914, at *12 (S.D.N.Y. Feb. 1, 2022) (quoting
*McGlone*, 867 F. Supp. 2d at 445). Several courts have held that
equitable tolling may be appropriate when motions have been
"pending for several months." *Id.*

The Court finds that equitable tolling of the statute of
limitations is inappropriate in this case. Because the equitable
tolling standard is case-specific, "equitable tolling is
generally not appropriate at the conditional certification
stage." *Ni v. HSBC Bank USA, N.A.*, No. 23CV00309ASKHP, 2024 WL

323284, at *7 (S.D.N.Y. Jan. 29, 2024) (quoting *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017)). Bimbo has not manufactured extraordinary delays in this litigation. It filed a counterclaim that several courts have allowed to proceed past motions to dismiss, *see, e.g.*, *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188, 189 (D.D.C. 2010), and after Plaintiffs filed their motion for conditional certification, Bimbo promptly engaged in discovery so that it could fairly respond to the motion. Additionally, when the parties submitted a stipulated discovery schedule, they agreed that Bimbo would have 30 days to respond to the motion for conditional certification. *See* ECF Nos. 59, 64. Therefore, Plaintiffs' request for equitable tolling is denied. This denial is without prejudice to any later application by a plaintiff for equitable tolling that "conforms to the requirements of the equitable tolling doctrine." *Santiago v. Cuisine By Claudette, LLC*, No. 23CV2675OEMRER, 2023 WL 8003323, at *8 (E.D.N.Y. Nov. 17, 2023) (quoting *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 660 (S.D.N.Y. 2017)).

Plaintiffs' proposed collective action includes any individual that worked as a distributor for Bimbo in the three years prior to the filing of the Complaint. ECF Mo. 63-1 at 4. Because the statute, 29 U.S.C. § 256(b), explains that an action is "considered to be commenced" when "written consent is filed

in the court," the notice should only be sent to individuals that worked as distributors in the three years prior to the issuance of this Order.

The remaining issues regard the parameters of the notice. There are four disputed points: whether to issue notice by mail *and* email, whether Plaintiffs' counsel or a third-party should administer the notice, whether a 90-day notice period and reminder notice is appropriate, and whether the notice should inform distributors that they could be liable for costs if they lose. ECF No. 75 at 32.

The Court grants Plaintiffs' request to send notice by both mail and email. Cases disapproving of email notice reference the "risk of [the communication] being modified or more broadly disseminated than the parties originally intended." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) (citing *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014)). But notice by email has become commonplace, and given the reality of modern communication, email notification is far more likely to reach potential opt-in plaintiffs than mail alone. *Id.; see also Camp*, 2019 WL 440567 at *5 (authorizing distribution of notice by mail, email, and text).

The Court denies Bimbo's request to contact potential plaintiffs via third-party administrator. The only case Bimbo

cites in support of this request is *Davine v. Golub Corp.*, in
which the parties agreed to have a third-party administer
oversee the notice. No. CV 14-30136-MGM, 2015 WL 12966278, at *1
(D. Mass. June 11, 2015). That is not the case here, and it is
standard practice for plaintiffs' counsel to contact potential
opt-in plaintiffs. *See, e.g., Neff,* 2016 WL 11808327, at *4.

The Court grants Bimbo's request for a 60-day opt-in
period. Courts in the Second Circuit have "coalesced around a
standard 60-day notice period." *Mark v. Gawker Media LLC*, No.
13-CV-4347 AJN, 2014 WL 5557489, at *1 (S.D.N.Y. Nov. 3, 2014).
90-day notices are typically granted when the period is agreed-
upon or special circumstances require a longer timeframe.
*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445,
452 (S.D.N.Y. 2011). Here, Plaintiffs have not offered any
particularized need for a 90-day opt-in period. Additionally,
provision of notice by email will reduce delays associated with
notice by mail, mitigating the need for a longer opt-in period.
The Court sees no reason to break from standard practice and
extend the opt-in period beyond 60 days.

The Court grants Plaintiffs' request to send a reminder
notice. There is little caselaw in the Second Circuit addressing
the propriety of reminder notices, and there is "no general
consensus among district courts in other circuits."
*Guzelgurgenli*, 883 F. Supp. 2d at 357. However, several courts

have authorized reminder notices in order to notify potential opt-in plaintiffs "of the pendency of the action." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *9 (E.D.N.Y. Sept. 30, 2021). The Court agrees that such reminder notice is reasonable here but given that the notice period will be 60 days, one reminder issued on the 30th day will be adequate. The parties shall confer over the contents of the reminder notice to generate acceptable terms.

Finally, Plaintiffs need not inform potential plaintiffs that they may be liable for costs if they lose. The weight of authority counsels against including such notice. *See, e.g.*, *Racey v. Jay-Jay Cabaret, Inc.*, No. 15 CIV. 8228 (KPF), 2016 WL 3020933, at *9 (S.D.N.Y. May 23, 2016). Courts have noted that reference to costs may be "unnecessary and potential confusing," or worse, may pose an "*in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree." *Id.* (citing *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 4950 (JFB) (ARL), 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007)). Additionally, Plaintiffs' proposed notice indicates that Plaintiffs' counsel are paid on a contingency fee basis, which means that there will likely be no

attorney's fees associated with the case. ECF No. 63-2 at 3. Accordingly, Bimbo's request is denied.[16]

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for FLSA conditional certification and judicial notice (ECF No. 63) is **granted** subject to the preceding conditions. Bimbo's motion to file a sur-reply brief (ECF No. 80) is also **granted**. Its motion for oral argument (ECF No. 85) is **denied**. Plaintiffs are authorized to send notice to a collective consisting of

> All persons who are performing or have performed work as Distributors for Bimbo Bakeries USA and/or Bimbo Foods Bakeries Distribution LLC in the States of Connecticut, New York, or Vermont under a distributor agreement during the period commencing three years prior to the issuance of this Order until the court-ordered deadline for such persons to opt into this case.

Notice to the members of the collective may be sent as presented in ECF No. 63-2. Bimbo must provide Plaintiffs' counsel with names, dates of employment addresses, and email addresses of such individuals within 30 days of this Order. This information should be provided in a reasonably accessible data file. Plaintiffs are authorized to send a reminder notice on the 30th day of the notice period.

---

[16] Bimbo's proposed notice references Flowers (presumably a defendant in a prior case). ECF No. 63-2 at 2. That should be corrected. Additionally, if Plaintiff Martel indeed withdraws from the case, the notice should be corrected to reflect that. ECF No. 63-2 at 2 ("Three current distributors (Plaintiffs) have sued Bimbo.").

DATED at Burlington, in the District of Vermont, this 2nd day of April, 2024.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ARTHUR PROVENCHER, MICHAEL McGUIRE,:
and RONALD MARTEL,                  :
on behalf of a class,               :
                                    :
          Plaintiffs,               :
                                    :
v.                                  :     Case No. 2:22-cv-198
                                    :
BIMBO BAKERIES USA, INC. and BIMBO  :
FOODS BAKERIES DISTRIBUTION LLC,    :
                                    :
          Defendants.               :

## OPINION AND ORDER

Plaintiffs Arthur Provencher, Michael McGuire, and Ronald Martel[1] filed this lawsuit against Bimbo Bakeries and its corporate affiliate (together "Bimbo") alleging misclassification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). Bimbo filed a motion to dismiss and a counterclaim. The Court denied Bimbo's motion to dismiss and dismissed its counterclaim. *Provencher v. Bimbo Bakeries USA, Inc.*, No. 2:22-CV-198, 2023 WL 8436279 (D. Vt. Dec. 5, 2023). It

_____

[1] Plaintiff Martel filed a motion to withdraw from the case. ECF No. 88. That motion sought dismissal without prejudice, and requested that both parties "bear their own costs and attorney fees" with regard to Martel's claims. *Id.* at 2. Plaintiffs' filing noted that Bimbo "did not consent and instead demanded costs and attorney fees." *Id.* at 1. Bimbo's deadline to respond to Plaintiffs' motion was May 6. It has not responded. Accordingly, Martel's motion to withdraw from the case is granted without prejudice; both parties will bear their own costs and fees related to Martel's claims.

then granted Plaintiffs' motion for conditional collective
action certification and judicial notice under the FLSA, 29
U.S.C. § 207(a)(1), 216(b). ECF No. 89. The Court's Order (the
"Collective Order") concluded that the Court has personal
jurisdiction over Defendants with regard to the claims of
potential plaintiffs in New York and Connecticut as well as
Vermont, and therefore allowed Plaintiffs to send opt-in notices
to putative out-of-state plaintiffs. *Id.* at 17. Bimbo then
motioned for the Court to certify appeal to the Second Circuit
on the personal jurisdiction issue. ECF No. 90. It also filed a
motion to stay execution of the Collective Order. ECF No. 92.
The Court granted that stay pending resolution of Bimbo's motion
for interlocutory appeal, ECF No. 97, and now **grants** Bimbo's
motion to appeal to the Second Circuit.

## DISCUSSION

The issue in this case arises from the Supreme Court's
ruling in *Bristol-Myers Squibb Co. v. Superior Ct. of
California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)
("*BMS*"). In that case, 86 California residents and 592 residents
of other states filed eight separate complaints in California
Superior Court asserting 13 California law claims against
Bristol-Myers Squibb ("BMS"). The nonresident plaintiffs did not
have any ties to California and while BMS sold the allegedly
dangerous drug in California, it did not manufacture, package,

2

or conduct other business activities in the state. The Supreme
Court held that "a defendant's general connections with the
forum are not enough" to authorize a state court to exercise
specific jurisdiction over state law claims of out-of-state
plaintiffs. *Id.* at 264. It noted that the Fourteenth Amendment's
Due Process Clause "limits the power of a state court to render
a valid personal judgment against a nonresident defendant," *id.*
at 262 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.
286, 291 (1980)), and explained that "[w]hat is needed . . . is
a connection between the forum and the specific claims at
issue." However, the Court left open whether "the Fifth
Amendment imposes the same restrictions on the exercise of
personal jurisdiction by a federal court." *Id.* at 269.

In the Collective Order, this Court held that the *BMS*
personal jurisdiction limitation does not preclude it from
exercising jurisdiction over plaintiffs in Connecticut and New
York. It explained that Bimbo was properly haled into federal
district court in Vermont by the Vermont distributors and held
that once a defendant is properly in federal court for alleged
violation of a federal statute, "that federal statute (and the
due process clause) governs the parameters of that lawsuit." ECF
No. 89 at 14. Because the FLSA explicitly authorizes plaintiffs
to initiate lawsuits on behalf of "other employees similarly
situated," this Court explained that it has jurisdiction over

3

such "similarly situated employees." *Id.* at 14-15 (quoting 29 U.S.C. § 216(b)). Several considerations supported this conclusion, including the fact that this case (unlike *BMS*) involved a federal statute rather than a state statute (mitigating forum-shopping concerns), *id.* at 16, the marginal added burden on Bimbo, *id.* at 16-17, and vertical and horizontal federalism interests. *Id.* at 17. Accordingly, the Court authorized Plaintiffs to send opt-in notices to Bimbo distributors in Vermont, New York, and Connecticut.

A district court may authorize interlocutory appeals when an it concludes that an order (1) "involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Mei Xing Yu v. Hasaki Rest.*, Inc., 874 F.3d 94, 98 (2d Cir. 2017). If the court concludes that interlocutory appeal is appropriate, it shall "state so in writing." *Id.* After it does so, the Court of Appeals may "permit an appeal to be taken . . . if application is made to it within ten days after the entry of the order." *Id.* This Court may amend its prior Order to include permission for a party to appeal. Fed. R. App. P. 5(a)(3).

**1. Controlling Question of Law**

4

The Second Circuit has explained that "resolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). While resolution of the *BMS* issue is not action-dispositive, it dramatically impacts the scope of the litigation (which, incidentally, may be dispositive from a settlement perspective). *See In re Enron Corp.*, No. 01-16034, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (stating that in order for an issue to be controlling, it must "at a minimum" materially affect the litigation's outcome). A ruling that this Court does not have jurisdiction over out-of-state plaintiffs would "avoid protracted and expensive litigation," for both the Court and the parties. *Harrington v. Cracker Barrel Old Country Store Inc.*, No. 21-00940, 2024 WL 342440, at *11 (D. Ariz. Jan. 30, 2024).[2] This issue is "controlling" for purposes of this litigation.

---

[2] The Court finds it worthwhile to note that expense and inconvenience stemming from an adverse decision are not, alone, justification for interlocutory review. If (as the Court ruled in the Collective Order) it is appropriate for the Court to exercise jurisdiction over out-of-state plaintiffs' claims, the efficiency burdens related to mass litigation are irrelevant. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)) ("Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'"); *O'Donnell v. Elgin, J. & E. Ry. Co.*, 193 F.2d 348, 353 (7th Cir. 1951) ("The jurisdiction of the Federal

Courts in the Second Circuit have also stated that issues warranting interlocutory review must present "pure questions of law." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (citing *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007)). Bimbo is correct that the *BMS* issue is a pure question of law. There is no dispute that out-of-state putative plaintiffs do not have any connection to Vermont. This Court's exercise of jurisdiction does not depend on facts relating to opt-in plaintiffs' connections to Vermont. *Cf. Jenkins v. Miller*, No. 2:12-CV-184, 2013 WL 12226891, at *1 (D. Vt. Dec. 10, 2013) (denying motion for interlocutory review because "a reviewing court [would have] only a preliminary and incomplete record to examine.").

Plaintiffs argue that the personal jurisdiction issue does not involve a "controlling issue of law" because the Collective Order made a preliminary determination regarding which plaintiffs may opt into the litigation. ECF No. 98 at 2. For support, they rely on *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d

---

courts is mandatory in the sense that such a court is without discretion to disclaim it in a case where a plaintiff has brought himself within the terms of the Federal Act."). Regardless of whether it would be the "epitome of inefficiency," the Court must exercise personal jurisdiction when appropriate. Therefore, the other factors of the 28 U.S.C. § 1292(b) analysis carry more weight than an assessment of whether the legal issue is "controlling."

863 (2d Cir. 1996). In that case, the district court certified an appeal on the question of the circumstances under which "a federal court may exercise jurisdiction over a foreign corporation on the basis of its wholly-owned subsidiary's presence and activity in New York." *Id.* at 864. The Second Circuit rejected that appeal as improvidently granted. *Id.* at 867. It explained that the district court was best situated to make factual determinations regarding personal jurisdiction. *Id.* Plaintiffs also point to several similar cases from this district, arguing that "preliminary determinations" on personal jurisdiction are improper subjects for interlocutory appeal. ECF No. 98 at 5-6 (citing *Jenkins*, 2013 WL 12226891, at *1; *Retail Pipeline, LLC v. JDA Software Grp., Inc.*, No. 2:17-CV-00067, 2018 WL 2298355, at *3 (D. Vt. May 21, 2018)).

*Koehler* and related personal jurisdiction cases are not controlling because the Collective Order's legal conclusion regarding personal jurisdiction was not preliminary. In *Koehler*, *Jenkins*, and *Retail Pipeline*, there were facts relevant to personal jurisdiction that the district courts had not yet considered. *Koehler*, 101 F.3d at 867 (noting that regardless of outcome on appeal, the district court would have to conduct further proceedings to determine whether the defendant was subject to jurisdiction); *Jenkins*, 2013 WL 12226891 at *1 (rejecting interlocutory review because "reversal of the order

7

would not terminate the action, even for these Defendants");
*Retail Pipeline*, 2018 WL 2298355, at *3 (denying interlocutory
review because the court had not yet "determined whether
Plaintiffs satisfied their ultimate burden of establishing
personal jurisdiction over Defendant") (quotations omitted).
Here, the Court reached a purely legal conclusion: that it may
constitutionally exercise jurisdiction over opt-in plaintiffs
located out-of-state. Tellingly, regardless of the Second
Circuit's decision on this issue,[3] there will be no reason for
the Court to conduct further "jurisdictional discovery"
regarding putative out-of-state plaintiffs.[4] And Plaintiffs have
not pointed to any particular facts that require further
resolution for an appellate court to make a determination on the
*BMS* personal jurisdiction issue (because there are none).

Finally, Plaintiffs state that this issue will not become
"controlling" until the out-of-state opt-in plaintiffs become

_____

[3] To be sure, if the Second Circuit affirms this Court's
decision, there will still be unresolved fact issues impacting
whether the Court can exercise jurisdiction over the out-of-
state plaintiffs. But those facts all go to whether the
plaintiffs in New York and Connecticut are "similarly situated"
to the named plaintiffs. 29 U.S.C. § 216(b). They do not go to
the threshold question of whether a court *may* certify a
collective action including plaintiffs from multiple states; no
further factual development is necessary (or possible) for
resolution of that issue.
[4] Unless some of those plaintiffs were to state that they had
"minimum contacts" with Vermont, an issue that the Court would
address only if it did not have jurisdiction over similarly
situated out-of-state claims by virtue of the FLSA itself.

parties to the lawsuit – that is, when they file opt-in notices
with the Court, which they cannot do until the Court allows
notice to be distributed. *Cf. Waters v. Day & Zimmermann NPS,
Inc.*, 23 F.4th 84, 91 (1st Cir. 2022) (holding that "opt-ins who
filed consent forms with the court became parties to the suit").
Because this Court stayed execution of its Collective Order
pending briefing and resolution of this interlocutory appeal
motion, notice has not been sent to opt-in plaintiffs.
Accordingly, none of the out-of-state putative opt-in plaintiffs
are yet parties to this case.[5]

The question becomes whether this issue is suitable for
interlocutory review notwithstanding that the Second Circuit
would be addressing this Court's personal jurisdiction over the

---

[5] Plaintiffs note that at least three other appellate courts to
have considered the issue have done so after the conclusion of
the opt-in period. ECF No. 98 at 8 (citing *Waters*, 23 F.4th at
86-87; *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 371 (3d Cir.
2022); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 398 (6th
Cir. 2021). However, two courts authorized interlocutory appeal
after conditional certification; those cases are currently
pending before the Seventh and Ninth Circuits. *Vanegas v. Signet
Builders*, Docket No. 23-2964 (7th Cir. 2023); *Harrington v.
Cracker Barrel Old Country Store Inc.*, Docket No. 24-742 (9th
Cir. 2024). No court (to this Court's knowledge) has declined to
hear an appeal on this issue because out-of-state plaintiffs
have not yet opted in, and for the reasons articulated above,
the Court finds that interlocutory review of this issue is
appropriate.

claims of individuals not yet party to the case. The Court concludes that it is, for two reasons.[6]

First, the issue is properly characterized as whether this Court may authorize the dissemination of notice to out-of-state putative plaintiffs. In *Hoffmann-La Roche Inc. v. Sperling*, the Supreme Court explained that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 n.9 (2d Cir. 2010) (explaining that *Hoffman-La Roche* applies to FLSA cases as well as ADEA cases); *see also Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023) (explaining that the district court may only send notice to individuals "eligible to join the suit"). The legal question at this stage of litigation is whether the putative out-of-state collective members are "potential plaintiffs" under *Hoffman-La Roche*, giving the Court authority to notify them of the pending action and giving them the right to opt into the litigation.[7] They can

_____

[6] At the outset, it is worth noting that this "non-party" issue does not fit neatly into the framework for evaluating interlocutory appeals. The legal issue is still "controlling," for the reasons outlined above.

[7] The Supreme Court has counseled that courts must exercise restraint in authorizing notice for fear of claim solicitation. *Hoffman-La Roche*, 493 U.S. at 174. Several courts have emphasized the important role that district courts play in monitoring the distribution of notice to "potential plaintiffs" to avoid solicitation. *See, e.g.*, *Bigger v. Facebook, Inc.*, 947

only be "potential plaintiffs" if the Court may exercise jurisdiction over their claims. This appeal is not about the rights of parties not before the Court; it is about this Court's power to authorize notice and opt-in privileges to those parties.[8]

The second reason why appeal is appropriate notwithstanding that out-of-state plaintiffs are not yet party to the case is that this issue presents a "case" or "controversy" cognizable under Article III. The Supreme Court has "long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*,

_____

F.3d 1043, 1049 (7th Cir. 2020) ("To counter [the dangers of settlement pressure and claims solicitation], trial courts have discretion to monitor the preparation and distribution of notice to 'potential plaintiffs,' who may opt in to the action.") (citations omitted); *Clark*, 68 F.4th at 1010 ("[N]otice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own."). This Court is aware of the harm that may result from improperly sending notice to parties outside of its jurisdiction.

[8] Plaintiffs argue that this becomes an appeal about "whether nonparties can assert jurisdiction, where those nonparties have not had the opportunity to join the case or assert their interests." ECF No. 98 at 7. This is not an accurate characterization of the issue because nonparties may only join the case and assert their interests if the Court may properly authorize them to do so in the first place. The appeal would resolve an actually litigated issue in this case: whether the Court may authorize Plaintiffs to send an opt-in notice to putative collective members that reside in New York and Connecticut.

592 U.S. 53, 58 (2020). Here, there is a genuine, live dispute between adverse parties. That dispute implicates a threshold question of the Court's power to notify putative plaintiffs of this case (and, by extension of that threshold question, a subsidiary question of whether the individuals seeking to be joined may invoke this Court's jurisdiction). As Bimbo explains, "[j]ust as it was not advisory for this Court to decide that it *has* personal jurisdiction . . . it would not be advisory for the Second Circuit to decide that the Court *does not have* personal jurisdiction over their claims." ECF No. 100 at 6 (emphasis in original).

### 2. Substantial Ground for Difference of Opinion

As the Court noted in its order conditionally certifying Plaintiffs' collective action, there is a circuit split on the personal jurisdiction issue. *Compare Waters*, 23 F.4th at 97 (holding that courts have jurisdiction over out-of-state putative FLSA plaintiffs) *with Fischer*, 42 F.4th at 370 (holding that courts do not have such jurisdiction); *Canaday*, 9 F.4th at 398 (same); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865-66 (8th Cir. 2021) (same). The Second Circuit has not yet weighed in on the issue, and district courts in the Circuit have fractured on the question. *Compare Bethel v. BlueMercury, Inc.*, No. 21 CIV. 2743 (KPF), 2022 WL 3594575, at *10 (S.D.N.Y. Aug. 22, 2022) (district court concluding that it could not exercise

out-of-state jurisdiction under *BMS*); *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 278 (S.D.N.Y. 2019) (same) *with Meo v. Lane Bryant, Inc.*, No. CV186360JMAAKT, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) (holding that courts may exercise out-of-state jurisdiction); *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019), *aff'd*, No. 17CV4780MKBRLM, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019).

The unresolved nature of this issue is reflected by the posture of many of the other appellate rulings on this issue. Three of the four appellate decisions on this question have come on interlocutory appeal. *See Fischer*, 42 F.4th at 370 (appellate court hearing case on interlocutory review); *Canaday*, 9 F.4th at 395 (same); *Waters*, 23 F.4th at 87 (same). And as Plaintiffs note, district courts in the Seventh and Ninth Circuits recently certified interlocutory review on the same question. *Vanegas*, Docket No. 23-2964 (7th Cir. 2023); *Harrington*, Docket No. 24-742 (9th Cir. 2024). It is difficult to conceive of an issue on which there might be more substantial ground for disagreement.

### 3. Material Advancement of Litigation

The final criteria is whether interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An interlocutory appeal "materially advance[s]" the litigation when it accelerates or simplifies

trial court proceedings. Wright & Miller § 3930 *Criteria for Permissive Appeal*, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.). Bimbo states that the putative class is composed of 654 distributors in Vermont, New York, and Connecticut. It also states that 600 of those 654 potential participants are located in New York and Connecticut. ECF No. 90-1 at 5. Resolving the personal jurisdiction issue – and thereby determining whether the action will involve a maximum of approximately 50 or 650 plaintiffs – has the potential to "advance the time to trial or shorten the trial." *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 274 (S.D.N.Y. 2009).[9] This is true regardless of outcome: as the District Court for the Western District of Tennessee noted, if the Second Circuit finds that this Court "does have personal jurisdiction over out-of-state opt-in plaintiffs, the parties would forego the burdens associated with bringing and defending FLSA collectives in multiple federal districts across the country." *Canaday v. Anthem Co., Inc.*, No. 1:19-cv-01084-STA-jay, ECF No. 91 at 1 (W.D. Tenn. June 8, 2020). Accordingly, resolution of the personal jurisdiction

---

[9] Courts and commentators have recognized the "artificiality of attempting to identify a controlling question as an inquiry separate from the prediction whether appeal may materially advance the termination of the litigation." Wright & Miller § 3930; *see also Primavera Familienstiftung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).

14

issue will materially advance the litigation, and the issue is suitable for interlocutory review.

### CONCLUSION

For the foregoing reasons, Bimbo's motion for certificate of appealability (ECF No. 90) regarding the Court's April 2, 2024 Collective Order (ECF No. 89) is **granted.** The Collective Order is certified for interlocutory review pursuant to 28 U.S.C. § 1292(b), and that Order is accordingly amended pursuant to Fed. R. App. P. 5(a)(3).

Plaintiffs' motion to dismiss Plaintiff Martel (ECF No. 88) is also **granted,** and Plaintiff Martel is dismissed without prejudice.

DATED at Burlington, in the District of Vermont, this 3rd day of June, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge

*Provencher v. Bimbo Bakeries USA, Inc.*
No. 24-3112

**CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)**
<u>**ADDENDUM B**</u>

**Issue:** Whether district courts have specific personal jurisdiction over out-of-state defendants to adjudicate the Fair Labor Standards Act claims of potential out-of-state plaintiffs opting into a collective action under the Supreme Court's personal jurisdiction precedents, including *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017).

**Standard of Review:** De novo. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) ("The standard of review applicable to district court decisions regarding personal jurisdiction is clear error for factual findings and de novo for legal conclusions.") (citation omitted).