# No. 24-3112

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ARTHUR PROVENCHER, individually and on behalf of all similarly situated individuals, and MICHAEL MCGUIRE, individually and on behalf of all similarly situated individuals,

Plaintiff-Counter-Defendants-Appellees,

RONALD MARTEL, individually and on behalf of all similarly situated individuals,

Plaintiff,

v.

JULIE A. SU, Acting Secretary of Labor, Acting Secretary of Law, United States Department of Labor,

Intervenor,

BIMBO BAKERIES USA, INC. and BIMBO FOODS BAKERIES DISTRIBUTION LLC,

Defendant-Counter-Claimants-Appellants.

On Appeal from the United States District Court for the District of Vermont
Case No. 2:22-cv-00198-WKS
William K. Sessions III, District Court Judge

## BRIEF OF APPELLEES

Merrill E. Bent
WOOLINGTON, CAMPBELL, BENT & STASNY, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
802-362-2560
merrill@greenmtlaw.com

Scott Moriarty
WANTA THOME PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55401
612-252-3570
samoriarity@wantathome.com

*Counsel for Plaintiffs-Appellees*

# <u>TABLE OF CONTENTS</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Statement of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

    A.    Description of the Nature of the Case . . . . . . . . . . . . . . .   13

    B.    Relevant Procedural History . . . . . . . . . . . . . . . . . . . . . . .   15

        1.    Motion for FLSA Conditional Certification . . . . . .   15

        2.    Order Granting FLSA Conditional Certification . .   17

        3.    Subsequent Proceedings. . . . . . . . . . . . . . . . . . . . . . .   18

    C.    Facts Relevant to Issues Submitted for Review . . . . . . . .   18

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

    **A.    In accordance with Congressional intent and the historical record, FLSA opt-ins are properly regarded as class members, for whom personal jurisdiction is established through the named plaintiff.** . . . . . . .   25

        **1.    As Congress confirmed through the Portal-to-Portal Act in 1947, FLSA collective-action proceedings incorporate Rule 23 spurious class action procedures as they existed at the time.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

2.     As expressed by courts and commentators at the time, a Rule 23 spurious class action was a representative proceeding, with a named plaintiff proceeding on behalf of the class. The same representative framework applies to the named plaintiff and opt-ins in an FLSA collective action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

3.     Under the jurisdictional principles governing spurious class actions in the past, which continue to have force in modern class action procedure, class members obtain personal jurisdiction through the named plaintiff. The same jurisdictional analysis applies to opt-ins in an FLSA collective action. . . . . . . . . . . . . . . . . . . . 32

4.     Because the term "party plaintiff" is not absolute, and because past context reveals interchangeable use of "plaintiff" and "class member" by federal authorities, it is wrong to conclude that FLSA opt-ins are held to the same jurisdictional standards as regular plaintiffs. . . . . . . . . . . . . . . . . . . . . . 35

B.   Under the plain language of the Civil Rules, FLSA opt-ins are not required to accomplish service of process under Rule 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

1.     Under its plain terms, Rule 4 only governs service of process by the initial named plaintiff at the outset of the case. . . . . . . . . . . . . . . . . . . . . . . . . 38

2.     As corroborated by other rules governing joinder and intervention of parties, there is no indication that FLSA opt-ins must replicate service of process under Rule 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

3.    Bimbo mischaracterizes case law on challenges to personal jurisdiction, which show that motions to dismiss for lack of personal jurisdiction are appropriately decided at the outset of the case. .......................................... 44

C.    As *BMS* only addresses state courts' authority to exercise personal jurisdiction under Fourteenth Amendment Due Process, it does not extend to federal courts' authority to exercise personal jurisdiction in federal proceedings under Fifth Amendment Due Process. ........................................ 45

1.    *BMS* applied Fourteenth Amendment Due Process to state courts' exercise of personal jurisdiction over nonresident plaintiffs' claims. It did not address federal courts' authority in class action proceedings under federal law. ........... 45

2.    Because Fifth Amendment Due Process governs federal courts' exercise of personal jurisdiction in proceedings under federal law, *BMS* does not apply to FLSA opt-ins' claims. ............. 47

3.    Because the FLSA expressly authorizes collective action by similarly situated workers without regard for their states of residence, Bimbo had reason to expect such proceedings and the District Court acted within the bounds of Fifth Amendment Due Process. ................. 49

4.    Because they failed to properly examine spurious class actions, the procedures for service of process, or Fifth Amendment Due Process, the appellate decisions that applied *BMS* to FLSA opt-ins were wrongly decided. ................ 52

D.    To achieve the policy and congressional intent underlying the FLSA, collective actions should

**encompass similarly situated workers in multiple states.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   54

    **1.**    **As recognized by the Supreme Court, Congress intended efficient, consolidated FLSA collective actions covering workers harmed by wrongful wage practices in multiple states.** . . . . . . . . .   54

    **2.**    **Under the FLSA economic realities test that governs the legal relationship between Bimbo and its distributors, this case has impacts that go beyond Vermont to other states.** . . . . . . . . . .   56

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   60

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   61

# TABLE OF AUTHORITIES

Federal Statutes

29 U.S.C. § 202(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     54

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14, 26, 27, 39

Portal-to-Portal Act of 1947, Ch. 52 § 5(a), 61 Stat. 84, 87 . . . . . . . .     27

Federal Rules

Fed. R. Civ. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22, 37-38, 42-43, 53

Fed. R. Civ. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     38

Fed. R. Civ. P. 4(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     38

Fed. R. Civ. P. 4(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     39-41 & n. 7, 42 n. 8

Fed. R. Civ. P. 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     38

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     44

Fed. R. Civ. P. 12(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     44

Fed. R. Civ. P. 14(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

Fed. R. Civ. P. 19(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     30-31, 33, 36

Fed. R. Civ. P. 23 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21, 28-29

Fed. R. Civ. P. 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

Fed. R. Civ. P. 24(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

Fed. R. Civ. P. 25(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

Fed. R. Civ. P. 82 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39 n. 6

<u>Federal Cases</u>

*Assoc. Orchestra Leaders v. Philadelphia Musical Soc'y, Local 77*, 203 F. Supp. 755 (E.D. Pa. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33 n. 3

*Bristol-Myers Squib Co. v. Superior Court*, 582 U.S. 255 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16, 22, 44-47, 51-52

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) . . . . . 14, 56-57

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) . . . . . . . . . . . . . . 26

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) . . . . . . . . . . 48

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) . . . 31

*Canaday v. Anthem Cos.*, 9 F.4th 394 (6th Cir. 2021) . . . . . . . 40 n. 7, 52-53

*DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194 (N.D.N.Y. 2023) . . 34 n. 4

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) . . . . . . . . . . . . . . . . . . . . . . 34, 36

*In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985) . . . . . . . . . . 39 n. 6

*Fischer v. Federal Express Corp.*, 42 F.4th 366 (3d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40 n. 7, 52-53

*Garcia v. Peterson*, 319 F. Supp. 3d 863 (S.D. Tex. 2018) . . . . . . . . . 35 n. 5

*Gibbons v. Equitable Life Assur. Soc'y*, 173 F.2d 337 (2d Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 36-37

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2020) 58 n. 11

*Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716 (2d Cir. 1980) . . . . . . . 40

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989) . . . . . . . . 26

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42 n. 8

*Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945) . . . . . . . .      48

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26-27, 30 n. 2, 36

*Knotts v. Nissan North America, Inc.*, 346 F. Supp. 3d 1310 (D. Minn. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34 n. 4

*Kulko v. Superior Court*, 436 U.S. 84 (1978) . . . . . . . . . . . . . . . . . . .      45

*Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668 (7th Cir. 1987) . . .      48

*Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021) . . . . . . . . . . . . . . . . .  22, 33-35

*Mallory v. Norfolk South Ry. Co.*, 600 U.S. 122 (2023) . . . . . . . . . . .  43 n. 8

*Mason v. Lumber Liquidators, Inc.*, No. 17-4780, 2019 WL 2088609 (E.D.N.Y. May 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34 n. 5, 55-56

*Meo v. Lane Bryant*, No. 18-6360, 2019 WL 5157024 (E.D.N.Y. Sept. 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34 n. 5

*Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438 (1946) . . . . . . . .      42

*Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207 (1959) . . . . .      54

*Mussat v. IQVIA*, 953 F.3d 441 (7th Cir. 2020) . . . . . . . . . . . . . .  22, 33-35

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) . . . . . . . . . . . . .      24

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

*Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      38

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) . . . . . . . . . .  22, 33, 38

*Polakoff v. Delaware Steeplechase & Race Ass'n*, 254 F. Supp. 574 (D. Del. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Powell v. United States Cartridge Co.*, 339 U.S. 497 (1950) . . . . . . .  23, 54

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) . . . . .  47

*Scott v. Chipotle Mexican Grill, Inc.* 954 F.3d 502 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30 & n. 2, 31, 57-58 n. 11

*Seiffert v. Qwest Corp.*, No. 18-80, 2018 WL 6590836 (D. Mont. Dec. 14, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35 n. 5

*Shipley v. Pittsburgh & Lake Erie R.R. Co.*, 70 F. Supp. 870 (W.D. Pa. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32-33, 35

*Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119 (9th Cir. 2009) . . . . . . .  31

*Suber v. VVP Servs., Inc.*, No. 21-2649, 2023 WL 115631 (2d Cir. Jan. 10, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44-45

*Swamy v. Title Source, Inc.*, No. 17-1175, 2017 WL 5196780 (Nov. 10, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55-56

*Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010) . . . . . . . . . . . . .  44-45

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23, 54, 56

*United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952)  30

*Vallone v. CJS Solutions Group.* 9 F.4th 861 (8th Cir. 2021) . . . . . .  53-54

*Vanegas v. Signet Builders, Inc.*, 113 F.4th 718 (7th Cir. 2024) . . . .  52-53

*Walden v. Fiore*, 571 U.S. 277 (2014) . . . . . . . . . . . . . . . . . . . . . . . . .  39-40

9

*Waldman v. Palestinian Liberation Organization*, 835 F.3d 317 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 52

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) . . . . . . . . . . . . . 38

*Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23, 38-41 & n. 7, 49-51 & n. 9, 55

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) . 45, 47

*Zachman v. Erwin*, 186 F. Supp. 681 (S.D. Tex. 1959) . . . . . . . . 33 n. 3, 35

*Zelley v. Muehleck*, 10 F.R.D. 62 (E.D. Pa. 1950) . . . . . . . . . . . . . 21, 32, 35

*Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001) . . . . 24

## Secondary Sources

83 Cong. Rec. 9264 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

93 Cong. Rec. 2182 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

James W. Moore & Marcus Cohn, *Federal Class Actions*, 32 Ill. L. Rev. 307 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 29, 36

4 Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* Civil § 1064 (4th ed. 2015) . . . . . . . . . . . . . 42

7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* Civil § 1807 (3d ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 31

*Moore's Federal Practice* ¶ 23.10 (2d ed. 1948) . . . . . . . . . . . . . . . . 32

7 Herbert B. Newberg & William B. Rubenstein, *Newberg on Class Actions* § 23:36 (6th ed. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Note, *Revised Federal Rule 23, Class Actions: Surviving Difficulties and New Problems Require Further Amendment*, 52 Minn. L. Rev. 509 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## JURISDICTIONAL STATEMENT

Appellees adopt the jurisdictional statement set forth in Appellants' brief.

## **STATEMENT OF THE ISSUE**

Appellees dispute Appellants' statement of the issue in part. Appellees concur that the appeal arises out of a putative collective action under the Fair Labor Standards Act. Appellees also concur that, in conditional certification proceedings, they asked the District Court to authorize notice to putative members in Connecticut, New York, and Vermont. Appellees dispute Appellants' description of the District Court ruling, to the extent Appellants assert that "out-of-state plaintiffs need not have connections with Vermont." With that adjustment, Appellees respectfully submit the following statement of the issue:

In a collective-action proceeding under the Fair Labor Standards Act, if opt-ins outside the forum state become members of an FLSA collective, can a federal district court exercise personal jurisdiction over the defendant on such members' claims?

## STATEMENT OF THE CASE

This case is an appeal from the April 2, 2024 order of Judge William K. Sessions of the District of Vermont (the District Court) in the proceedings below (SPA 1-38), in which the District Court granted conditional certification of Appellees' collective-action claim under the FLSA.

### A. Description of the Nature of the Case

Appellees work as distributors for Appellants Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries Distribution LLC (collectively Bimbo). For that job, Appellees deliver Bimbo's bread products from a Bimbo warehouse to grocery stores and other retail outlets in their respective territories. (*See* JA 14-15.)

In the District Court proceedings, Appellees brought wage violations against Bimbo under state and federal law. On behalf of Bimbo distributors in Vermont, Appellees asserted putative class-action claims under Vermont wage law; and on behalf of Bimbo distributors in Connecticut, New York, and Vermont, Appellees asserted putative collective-action claims under the FLSA for unpaid overtime. (*See* JA 24-26.)

Both the state and FLSA claims rest on a misclassification theory: that Bimbo misclassifies its distributors as independent contractors, when they are employees as a matter of law. Through substantially similar "Distributor

Agreements" with Appellees and other distributors, Bimbo purports to grant "distribution rights," characterizing distributors' work as an independent business operation. (*See* JA 17-18; *see also* JA 66-87 (distributor agreement of Appellee Arthur Provencher).) Appellees contend that in fact, distributors do not have independent businesses, and that Bimbo controls all material aspects of the job, depriving distributors of control or discretion over business matters or opportunities for profits. (*See* JA 18-19.)

To determine whether workers are properly classified as independent contractors or employees under the FLSA, this Circuit applies an "economic realities" test. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988). Appellees contend that as a matter of economic reality, they and other distributors depend on Bimbo for their livelihood, making them employees entitled to overtime pay under the FLSA.

The FLSA further authorizes plaintiffs to bring collective action "in any Federal or State court of competent jurisdiction … for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under this provision, Appellees brought a putative collective action on behalf of distributors in the states of Connecticut, New York, and Vermont, alleging that they were similarly situated through Bimbo's common misclassification practices. (*See* JA 21-22.)

14

**B.    Relevant Procedural History**

Appellees commenced this case in the District of Vermont in October 2022. (*See* JA 14-29.) After various motions on the pleadings were resolved, the parties submitted a discovery plan to the District Court on January 2, 2024. But as that plan shows, the parties largely disagreed about the scope or timing of discovery. (*See* Dkt. 61.) The District Court never entered a pretrial scheduling order, and prior to this appeal, discovery remained in its early stages.

**1.    Motion for FLSA Conditional Certification**

Appellees brought a motion for FLSA conditional certification on January 23, 2024. Through that motion, Appellees sought leave from the District Court to issue notice to putative collective-action members. In material part, the motion defined the proposed collective as follows: "All persons who are performing or have performed work as distributors for [Bimbo] in the States of Connecticut, New York, or Vermont under a distributor agreement [during a specified period.]" (JA 158-59.)

 Among other arguments opposing the motion, Bimbo asserted that the District Court could not exercise personal jurisdiction over FLSA claims by out-of-state distributors. To support that view, Bimbo cited the Supreme Court decision in *Bristol-Myers Squib Co. v. Superior Court*, 582 U.S. 255

(2017) [*BMS*], among other cases. (Dkt. 75 at *20-*21.)[1] Bimbo further asserted that Appellees had no connections with distributors outside the state of Vermont. (*Id.* at *8, *15-*16 & n. 12.)

Answering these arguments on reply, Appellees disputed whether *BMS* applied to FLSA opt-ins. Appellees argued that *BMS* does not apply to FLSA collective actions, and that Congress intended FLSA collective actions to be nationalized in scope, not splintered into proceedings in different states. Appellees added that *BMS* did not apply to class action proceedings: because federal courts do not required class members to separately establish personal jurisdiction, Appellees argued, the same reasoning should apply to opt-ins who join an FLSA collective action. (Dkt. 78 at *17-*19.)

Appellees also countered the argument that they lacked connections to Bimbo distributors in Connecticut and New York. Citing their deposition testimony and documentation they received from Bimbo, Appellees showed that Bimbo maintains a nationalized ordering system, covering distributors in Vermont and other states. Appellees also supplied "playbooks" that dictate how distributors sell and merchandise Bimbo products at "major chain" grocery stores like Shaw's and Hannaford, covering operations in not only

---

[1] For filings in the district court record not incorporated in the parties' joint appendix, this brief cites by docket number using the pagination in the pdf (not the internal pagination in the filing).

Vermont but also Maine, Massachusetts, New Hampshire, and New York. (Dkt. 78 at *9-*10.)

### 2. Order Granting FLSA Conditional Certification

In an order on April 2, 2024, the District Court granted Appellees' motion for FLSA conditional certification and authorized notice to Bimbo distributors in Connecticut, New York, and Vermont. (SPA 37.)

In its decision, the District Court reviewed *BMS* and concluded that it did not apply, finding that "Bimbo had sufficient contact with Vermont to be subject to the jurisdiction of its state courts" and "once a defendant is properly in federal court for violation of a federal statute, that federal statute … governs the parameters of that lawsuit." (SPA 14.) The District Court further observed that, under the collective-action procedure in the FLSA, Congress intended a single, consolidated proceeding. (SPA 15.)

The District Court also examined whether its exercise of personal jurisdiction raised due process concerns. Distinguishing the due process analysis from *BMS*, the District Court framed the issue as whether Bimbo was forced to litigate claims under "the laws of a state that the defendant did not expect." (SPA 15.) Because the FLSA is federal law, the District Court accordingly reasoned: "This case does not require consideration of the competing interests of different states in applying their own laws." (SPA 17.)

17

The District Court found Appellees "properly haled Bimbo into federal court" and Bimbo had reason to expect that, under the FLSA, out-of-state distributors could be joined through collective-action proceedings. (SPA 16 ("[Appellees] now seek to join out-of-state distributors in the action for violations of the [FLSA]—a law that Bimbo knew applied in New York and Connecticut as well as Vermont.").) The District Court accordingly ruled that it had personal jurisdiction over putative FLSA opt-ins. (SPA 17.)

### 3. Subsequent Proceedings

Through motions filed in April 2024, Bimbo asked the District Court to stay its conditional certification order and requested that the order be certified for interlocutory appeal. (JA 1581-1587.) The District Court granted the stay (SPA 39), and in an order on June 3, 2024, certified the order for interlocutory appeal (SPA 40-54). Bimbo then petitioned this Circuit for interlocutory appeal, which was granted, and this appeal followed.

### C. Facts Relevant to Issues Submitted for Review

For purposes of this appeal, the relevant facts relate to the scope of Bimbo's business practices with distributors—not just within the forum state of Vermont, but also the extent those practices encompass distributors in Connecticut and New York.

Appellees contend that Bimbo uses a nationalized ordering system to control products and pricing, and through that system, effectively prevent distributors from exercising independent control over their profits. (*See* JA 432-33 (testimony of Appellee Arthur Provencher about implementation of nationalized system).) Through that system, Bimbo can force distributors to carry and sell specific products. (*See* JA 1108-10 (testimony of Appellee Michael McGuire about being required to carry less profitable Sara Lee products).)

These systemic practices are reinforced by the business relationships Bimbo maintains with "major chain" retailers like Shaw's, Hannaford, and Dollar General. These major chains make up the majority of distributors' work: Appellee Provencher estimated that they made up 80 to 85 percent of his business, and Appellee McGuire estimated 70 percent. (JA 650, 1098-99).

Bimbo also supplies distributors with major chain "playbooks," which are prominently marked with Bimbo's logo and that of the major chain store, and which direct the pricing and display of Bimbo products. (*See* JA 1547-65 (exemplar playbooks); *see also* JA 627-29, 632-34 (testimony of Appellee Provencher regarding playbooks).) Bimbo has delivered the playbooks through managers whose territories encompass New York and Vermont. (*See*

JA 627 ("northern New York/Vermont"), 1548 ("NNY/VT"), 1558 (same).) The playbooks themselves also show Bimbo imposing common requirements across multiple states. (*See* JA 1547-56 (showing common Shaw's playbook for sales region covering New York and Vermont); JA 1562-63 (directing Hannaford displays in Maine, Massachusetts, New Hampshire, New York, and Vermont).)

## SUMMARY OF THE ARGUMENT

Bimbo's arguments are based on the flawed premise that FLSA opt-ins are regular plaintiffs, who must accomplish service of process and establish personal jurisdiction in the same manner as the original named plaintiffs. In accordance with Congressional intent, FLSA opt-ins are properly regarded as class members. As such, they acquire personal jurisdiction through the named plaintiffs and have no separate obligation to serve process or show personal jurisdiction.

When Congress amended the FLSA through the Portal-to-Portal Act in 1947, it intended to incorporate the spurious class action procedures that existed in the Civil Rules at the time. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012). Under then-Rule 23(a)(3), those procedures indicate a class action where a plaintiff, as class representative, proceeds on behalf of class members. James W. Moore & Marcus Cohn, *Federal Class Actions*, 32 Ill. L. Rev. 307, 314-19 (1937). Applying that framework to FLSA collective action, FLSA opt-ins must be deemed class members.

Federal courts of the time consistently ruled that spurious class action members were not required to separately establish personal jurisdiction. *See, e.g., Zelley v. Muehleck*, 10 F.R.D. 62, 63 (E.D. Pa. 1950). That view carried over to the modern class action, with the Supreme Court reinforcing that

21

class members are not required to show personal jurisdiction. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985). Consistent with those authorities, appellate courts have concluded that class members fall outside *BMS* personal-jurisdiction analysis. *Lyngaas v. Ag*, 992 F.3d 412, 433 (6th Cir. 2021); *Mussat v. IQVIA*, 953 F.3d 441, 447 (7th Cir. 2020). That is the correct approach for FLSA opt-ins as well.

Because the Civil Rules do not require class members to accomplish service of process, this Court need not address whether opt-ins are bound by Rule 4. But if this Court does reach the issue, Rule 4 is limited by its plain language to service of summons by the initial plaintiff. There is no textual basis, in Rule 4 or other Civil Rules, for extending service requirements to FLSA opt-ins. Such a requirement would thwart the unified collective-action proceeding Congress intended for similarly situated workers under the FLSA. *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93-94 (1st Cir. 2022).

*BMS* otherwise does not impact federal courts' authority to exercise personal jurisdiction when out-of-state FLSA opt-ins join a collective action. *BMS* assessed state courts' limitations under Fourteenth Amendment Due Process, but when federal courts exercise statutory powers under federal law, Fifth Amendment Due Process applies. Because Bimbo was properly haled

into federal court for FLSA violations, and because Bimbo could reasonably expect those proceedings to encompass similarly situated workers in the forum state and other states, Fifth Amendment Due Process is satisfied. *See Waters*, 23 F.4th at 92-96. The concerns about state-law overreach that motivated *BMS* are immaterial to federal courts' exercise of federal statutory authority.

Through collective action proceedings, Congress intended an efficient, consolidated mechanism for similarly situated workers to obtain relief under the FLSA. Congress also intended that that the FLSA redress wrongful wage practices nationally, with "the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quoting *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516 (1950)). When similarly situated opt-ins are properly recognized as spurious class members, who can fully participate in a collective action without regard for their states of residence, this honors the Congressional intent underlying the FLSA and ensures that workers have effective access to relief.

## **<u>STANDARD OF REVIEW</u>**

When reviewing a decision on FLSA conditional certification, this Court reviews the legal standards and legal conclusions of the district court de novo. *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 547, 555 (2d Cir. 2010). The district court's factual findings, as well as its application of those findings to legal standards, are reviewed for abuse of discretion. *Id.* An abuse of discretion only occurs when a district court decision rests on an error of law or a clearly erroneous factual finding, or the district court's decision cannot be "located within the range of permissible decisions." *Id.* (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

## ARGUMENT

**A.    In Accordance with Congressional Intent and the Historical Record, FLSA Opt-Ins Are Properly Regarded as Class Members, for Whom Personal Jurisdiction Is Established Through the Named Plaintiff.**

Bimbo's appeal rests on a faulty premise: that FLSA opt-ins must be treated as regular parties to the lawsuit, who are required to individually establish personal jurisdiction against the defendant. But giving due regard for Congressional intent and the historical record, an FLSA collective action must be treated as a form of class action, in which opt-ins are properly characterized as class members.

As in other class actions, the named plaintiff in an FLSA collective action is a class representative. This representative accordingly establishes personal jurisdiction on behalf of the collective as a whole. If Congressional intent is to be honored, and full effect given to the remedial framework that provides classwide relief for workers harmed by FLSA violations, then opt-ins cannot be bound by threshold requirements for personal jurisdiction.

**1. As Congress confirmed through the Portal-to-Portal Act in 1947, FLSA collective-action proceedings incorporate Rule 23 spurious class action procedures as they existed at the time.**

The FLSA authorizes aggrieved workers the right to bring action "by any one or more employees for an on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

This enforcement procedure is traceable to the Congressional debates leading up to enactment of the FLSA. Representative action was seen as central part of the remedial framework, "a common-sense and economical method of regulation" that "puts directly into the hands of the employees … the means and ability to enforce their rights[.]" *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 n. 16 (1945) (quoting 83 Cong. Rec. 9264 (1938)).

By bringing action not just on their own behalf, but also collectively on behalf of other "similarly situated" employees suffering the same harms, Congress meant to make relief efficient and accessible. The underlying policy was to "lower[ ] individual costs to vindicate rights by the pooling of resources," thus encouraging "efficient resolution … of common issues of law and fact" in "one proceeding." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

As the Third Circuit discussed in *Knepper v. Rite Aid Corporation*, soon after the FLSA was enacted, a problem emerged with representative

actions: unions or other so-called "outsiders" would bring FLSA actions on behalf of workers. 675 F.3d 249, 256-57 (3d Cir. 2012). The so-called FLSA "representatives," therefore, were not aggrieved workers themselves. *See id.* at 256 ("[T]he primary concern of Congress … [were] instances where union leaders allegedly 'stirred up' litigation without a personal stake in the case.").

Congress took action against that problem with its amendments to the FLSA through the Portal-to-Portal Act in 1947, adding the requirement that "[n]o employee shall be a party plaintiff to any [FLSA] action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b) (codifying Portal-to-Portal Act of 1947, Ch. 52 § 5(a), 61 Stat. 84, 87).

As *Knepper* and other authorities have observed, the purpose of the amendment was to "codif[y] the existing rules *governing spurious class actions*," recognizing that the FLSA incorporated spurious class-action procedure. 675 F.3d at 257 (emphasis added); *see also* 7 Herbert B. Newberg & William B. Rubenstein, *Newberg on Class Actions* § 23:36 (6th ed. 2022). With those procedures, Congress intended that FLSA class representatives have a stake in the case, as well as requiring other aggrieved workers to give their "affirmative permission" to join. *Knepper*, 675 F.3d at 257.

**2. As expressed by courts and commentators at the time, a Rule 23 spurious class action was a representative proceeding, with a named plaintiff proceeding on behalf of the class. The same representative framework applies to the named plaintiff and opt-ins in an FLSA collective action.**

When considering the relationship between plaintiffs and opt-ins in FLSA collective actions, this Court accordingly must examine the rules governing spurious class actions in 1947. At the time, Rule 23 was unchanged from its original version, adopted a decade earlier. It stated in material part,

> (a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will ensure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
>
> > (1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
> >
> > (2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or
> >
> > (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

Fed. R. Civ. P. 23 (1937).

Each paragraph of Rule 23(a) was associated with a different type of class action. As labeled by commentators at the time, Rule 23(a)(1) provided for a "true" class action; Rule 23(a)(2) provided for a "hybrid" class action; and Rule 23(a)(3) provided for a "spurious" class action. *See generally* Note, *Revised Federal Rule 23, Class Actions: Surviving Difficulties and New Problems Require Further Amendment*, 52 Minn. L. Rev. 509, 510-11 & n. 12 (1967); James W. Moore & Marcus Cohn, *Federal Class Actions,* 32 Ill. L. Rev. 307, 314-19 (1937).

Like the other forms of class action under Rule 23(a), spurious class actions were representative actions. Under the introductory paragraph, one plaintiff—"such of them, one or more, as will ensure the adequate representation of all"—proceeds on behalf of other aggrieved class members. Subparagraph (3) reinforces the representative nature of the proceeding, where the named plaintiff asserts a common harm to the class and common relief for the class: "a common question regarding the several rights and a common relief is sought." By incorporating spurious class action procedure into the FLSA, Congress necessarily intended that FLSA collective actions be representative proceedings.

This intent is reinforced by how courts labeled FLSA collective actions around the time. The Supreme Court and other federal authorities referred

to FLSA collective actions as "class actions." *See, e.g., United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952) (discussing FLSA relief including "individual or class actions for restitution and damages"). And this Circuit did the same. *See, e.g., Gibbons v. Equitable Life Assur. Soc'y*, 173 F.2d 337, 338-39 (2d Cir. 1949) (holding opt-ins were properly joined to FLSA case "in a spurious class action").

Similar considerations guided this Circuit's analysis of FLSA collective-action procedure in *Scott v. Chipotle Mexican Grill, Inc.* 954 F.3d 502 (2d Cir. 2020). Favorably citing *Knepper*, this Court observed that the Portal-to-Portal Act incorporated "spurious" class action procedure.[2] *Id.* at 519.

In doing so, this Circuit acknowledged that such proceedings are less stringent than the "modern form" of class action procedure, which came into being when Rule 23 was amended in 1966. *Id.* at 519-20 ("[T]he drafters [of the 1966 amendments] also omitted the opt-in requirement contained in the former 'spurious' class action device ...."). This Circuit also found the FLSA

---

[2]     While *Scott* described the Portal-to-Portal Act as "put[ting] an end to representational litigation in the context of actions proceeding under § 216(b)," it did not specifically discuss what "representational litigation" meant in that context. As *Knepper* reveals, that Act put an end to aggrieved workers being represented by a *nonparty*, someone who had "no stake." 675 F.3d at 260 ("representatives had allegedly manufactured litigation in which they had no personal stake"). More importantly, *Scott* did not further examine the role of class representatives in spurious class actions.

set "a lower bar" than modern Rule 23 and that collective action proceeds under "loose requirements for permissive joinder and consolidation at trial." *See id.* at 520 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018)).

Consistent with the representative language in the FLSA itself ("for and in behalf of ... other employees similarly situated") and the historical basis of FLSA collective action in class action, federal courts have long understood that collective actions are representative actions. *See, e.g.*, *Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009) (upholding denial of FLSA certification where plaintiff settled and could no longer represent the class).

On a related point, when opt-ins join an FLSA collective action, their role and involvement in the litigation is limited. Unlike regular plaintiffs, opt-ins are not required to file their own complaints. They do not have the ability to bring their own motions or negotiate their own settlements. Opt-ins also proceed through named plaintiffs' counsel and rely on that counsel to act for the class. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* Civil § 1807 n. 14 (3d ed. 2005). Their unique and limited role further demonstrates that FLSA collective actions are representative proceedings.

3. **Under the jurisdictional principles governing spurious class actions in the past, which continue to have force in modern class action procedure, class members obtain personal jurisdiction through the named plaintiff. The same jurisdictional analysis applies to opt-ins in an FLSA collective action.**

Properly categorizing FLSA collective action a spurious class action, it becomes clear that FLSA opt-ins acquire personal jurisdiction through the class representative and class members are not required to further establish personal jurisdiction.

Under class action procedures as they were understood at the time, named plaintiffs were required to establish personal jurisdiction, but class members were not. *See, e.g., Polakoff v. Delaware Steeplechase & Race Ass'n*, 254 F. Supp. 574, 578 & n. 9 (D. Del. 1966) (finding "the spurious class action may enable other persons similarly situated to intervene without regard to jurisdictional limitations applicable to original parties"); *Zelley v. Muehleck*, 10 F.R.D. 62, 63 (E.D. Pa. 1950) ("The ability of other persons similarly situated to intervene without regard to jurisdictional limitations applicable to the original parties is the raison d'etre of the spurious class action suit[.]") (quoting *Moore's Federal Practice* ¶ 23.10 (2d ed. 1948)); *Shipley v. Pittsburgh & Lake Erie R.R. Co.*, 70 F. Supp. 870, 874 (W.D. Pa. 1947) (finding spurious class members "could intervene regardless of the amount of their claim, or their diversity of citizenship ... since once

jurisdiction was founded in the original plaintiffs, others … may be allowed to intervene").[3]

Decades later, in *Phillips Petroleum Co. v. Shutts*, the Supreme Court confirmed that longstanding proposition, holding that class members have no separate obligation to establish personal jurisdiction. "[A] forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." 472 U.S. 797, 811 (1985).

Consistent with that principle, two Circuits have declined to apply *BMS* to class members in Rule 23 class actions. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("[T]he named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so."); *Lyngaas v. Ag*, 992

---

[3]     *See also Assoc. Orchestra Leaders v. Philadelphia Musical Soc'y, Local 77*, 203 F. Supp. 755, 758 (E.D. Pa. 1962) ("The ability of other persons similarly situated to intervene without regard to jurisdictional limitations applicable to the original parties is the raison d'etre of the spurious class suit[.]") (quoting *Zachman v. Erwin*, 186 F. Supp. 681, 689 (S.D. Tex. 1959)).

F.3d 412, 433 (6th Cir. 2021) (quoting *Mussat*).[4] These decisions articulated principles that are important to this appeal.

Most importantly, they stress that the "party" label "does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Mussat*, 953 F.3d at 447 (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002)); *Lyngaas*, 992 F.3d at 437 (also quoting *Devlin*). In *Mussat*, the Seventh Circuit further observed that Rule 4 only requires the initial plaintiff to accomplish service of process and obtain personal jurisdiction over the defendant; the rule does not apply to class members. *Mussat*, 953 F.3d at 447-48.[5]

---

[4]   The preponderance of federal district court decisions have taken the same view. *See, e.g., DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 211-12 (N.D.N.Y. 2023) ("The majority of courts, including district courts in [the Second] Circuit, have found that [*BMS*] does not apply to putative class members in the class action context."); *Knotts v. Nissan North America, Inc.*, 346 F. Supp. 3d 1310, 1332-33 & nn. 7-13 (D. Minn. 2018) ("[D]istrict courts have largely declined to extend *BMS* to the class action context.") (citing cases).

[5]   Consistent with that reasoning, the District Court held that Appellees had established personal jurisdiction at the outset of the case under Rule 4. It further ruled that, once Bimbo was properly part of the lawsuit, FLSA opt-ins did not need to further establish personal jurisdiction. (*See* Order at 14-16.) Other district courts in the Second Circuit have made similar rulings, treating FLSA opt-ins like class members and accepting personal jurisdiction through the named plaintiffs. *See, e.g., Meo v. Lane Bryant*, No. 18-6360, 2019 WL 5157024 at *11 (E.D.N.Y. Sept. 30, 2019); *Mason v. Lumber Liquidators, Inc.*, No. 17-4780, 2019 WL 2088609 at *5-*6 (E.D.N.Y. May 13, 2009). Outside the Second Circuit, many other district courts have

Consistent with the historical grounding of FLSA in spurious class action, this Court has sound reason to hold that opt-ins are class members. Under the original spurious class action rule, federal courts consistently held that personal jurisdiction was acquired through named plaintiffs, and class members do not have to do more. *See, e.g., Zachman*, 186 F. Supp. at 689; *Zelley*, 10 F.R.D. at 63; *Shipley*, 70 F. Supp. at 874. More recently, appellate courts have reiterated that in federal class actions, class members are not required to further establish personal jurisdiction. *Mussat*, 953 F.3d at 447; *Lyngaas*, 992 F.3d at 433. Because FLSA collective-action members are not required to make any further showing of personal jurisdiction, the District Court may proceed with notice to them.

**4.  Because the term "party plaintiff" is not absolute, and because past context reveals interchangeable use of "plaintiff" and "class member" by federal authorities, it is wrong to conclude that FLSA opt-ins are held to the same jurisdictional standards as regular plaintiffs.**

Bimbo counters that, because the FLSA calls opt-ins "party plaintiffs," opt-ins must be deemed regular plaintiffs and held to the same standards for

---

reached the same result. *See, e.g., Garcia v. Peterson*, 319 F. Supp. 3d 863, 879 (S.D. Tex. 2018) ("The court ... declines to extend the [*BMS*] requirement to analyze personal jurisdiction ... to the FLSA collective action jurisdictional analysis."); *Seiffert v. Qwest Corp.*, No. 18-80, 2018 WL 6590836 at *2-*4 (D. Mont. Dec. 14, 2018) ("The original plaintiff in a collective action under the FLSA dictates a district court's analysis of specific jurisdiction.")

service and personal jurisdiction. But on closer scrutiny, that premise quickly fails. As noted beforehand, the Supreme Court observed that a party label "does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin*, 536 U.S. at 9-10.

As the preceding historical discussion shows, when Congress used the "party plaintiff" label in the Portal-to-Portal Act, that label was deployed in the context of spurious class actions. There is no indication that Congress meant to hold opt-ins to the jurisdictional standards of regular plaintiffs—if anything, spurious class action procedures patently contradict that. And the "party plaintiff" label signaled a completely different concern: making sure opt-ins could be affirmatively identified and suffered a similar harm as the class representative. *See Knepper*, 675 F.3d at 257.

On closer review of legal usage of that era, "party plaintiffs" also had a different meaning. When it was first promulgated, Rule 23 did not clearly distinguish between plaintiffs and class members. *See* Moore & Cohn, *supra* at 320 (using "plaintiff" to describe class members in spurious class actions). And before modern Rule 23 was adopted in 1966, this Circuit used the term "plaintiff" to describe class members in spurious class action proceedings. *See Gibbons*, 173 F.2d at 339 (holding FLSA opt-ins were properly "joined in

36

a spurious class action" even though they were not "specifically named as parties plaintiff") (quotation omitted).

For that matter, as recently as its decision in *Phillips Petroleum Co. v. Shutts*, the Supreme Court used the term "plaintiff" to mean the same thing as "class member": "[A] forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." 472 U.S. 797, 811 (1985). When the Supreme Court uses terms like "plaintiff" and "class member" interchangeably, it does not make sense to rigidly define the term "party plaintiff" in the way Bimbo demands here, particularly when its view runs against historical context.

## B. Under the Plain Language of the Civil Rules, FLSA Opt-Ins Are Not Required to Accomplish Service of Process Under Rule 4.

If this Court accepts that FLSA opt-ins are class members, that is enough by itself to fully dispose of this appeal. Because class members are not named plaintiffs, they do not need to accomplish service of process, nor would there be any need to reach the question of whether service comports with Due Process.

On the flawed premise that opt-ins are regular plaintiffs, Bimbo goes on to argue that FLSA opt-ins must accomplish service of process under Rule

4. That argument also fails because it contradicts the plain language of the Rules. *Cf. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989) (holding that when a rule's text is "unambiguous, judicial inquiry is complete") (quotation marks omitted); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n. 9 (1980) ("The Federal Rules should be given their plain meaning.").

> **1. Under its plain terms, Rule 4 only governs service of process by the initial named plaintiff at the outset of the case.**

When seeking to accomplish service against a defendant, Rule 4(c)(1) states,

> A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) ....

In turn, Rule 4(b) and Rule 4(m) plainly indicate that service happens at the outset of the case. Rule 4(b) states, "On or after filing the complaint, the plaintiff may present a summons to the clerk for signature ...."; Rule 4(m) then provides that service be done "within 90 days after the complaint is filed."

The natural and reasonable reading of Rule 4 is that the initial plaintiff, not ensuing class members or FLSA opt-ins, are responsible for meeting these requirements. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84,

93-94 (1st Cir. 2022) ("[I]t nowhere suggests that Rule 4 deals with anything other than service of a summons, or that Rule 4 constrains a federal court's power to act once a summons has been properly served, and personal jurisdiction has been established.").[6]

Nothing in the FLSA suggests additional jurisdictional demands on opt-ins. It only requires opt-ins to "give[ ] … consent in writing" and to file that consent with the district court. 29 U.S.C. § 216(b). There is no indication the FLSA triggers further procedural requirements under the Civil Rules. As stated beforehand, if the Congressional intent behind collective actions is properly honored, the correct framework is that for spurious class actions as they existed in 1947. Because opt-ins join as class members, they fall under the personal jurisdiction established by the original named plaintiff.

Appellees do not dispute that service, in accordance with Rule 4(k), is the vehicle by which federal courts initially acquire personal jurisdiction over a defendant. *See, e.g., Walden v. Fiore*, 571 U.S. 277, 283 (2014) (finding personal jurisdiction "in most cases is linked to service of process on a

---

[6]      That interpretation is reinforced by Rule 82, which states that the Civil Rules "do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." *Cf. In re Feit & Drexler, Inc.*, 760 F.2d 406, 414-15 (2d Cir. 1985) (holding that once a court established personal jurisdiction over a party to a bankruptcy proceeding, the court could exercise statutory powers under the Bankruptcy Code).

defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located") (cleaned up).

But Rule 4(k), by its own terms, only supplies "territorial limits of effective service." Once the summons is effectively served on a defendant, Rule 4(k) is no longer operative and further service is not required. *See also Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 721 (2d Cir. 1980) ("The district court, having acquired personal jurisdiction over defendant, has power to determine all of the claims asserted in the complaint.").

Notwithstanding the clear structure of the rule, Bimbo demands that Rule 4(k) continue to be applied throughout a case. But if the Rules' drafters had intended that, they would not have placed it in a subsection of a rule that only governs service of the initial summons. The First Circuit made a similar observation in *Waters*, noting Rule 4 is titled "Summons," which "suggests that it is concerned only with service[.]" 23 F.4th at 93. Neither Bimbo, nor any of the cases it cites, can supply a textual basis in Rule 4(k) for continued application of the rule after a summons is served.[7]

---

[7]  For instance, in *Canaday v. Anthem Companies*, the Sixth Circuit did not find a textual basis for applying Rule 4 to opt-ins, and later acknowledged that FLSA opt-ins serve their notices to the defendant under Rule 5. 9 F.4th 392, 399-400 (6th Cir. 2021). In *Fischer v. Federal Express Corp.*, the Third Circuit likewise determined that "Rule 5 does not tie personal jurisdiction to a state's service of process and personal jurisdiction rules." 42 F.4th 366, 386 (3d Cir. 2022). By comparison, the *Waters* court found no textual indication

**2.    As corroborated by other rules governing joinder and intervention of parties, there is no indication that FLSA opt-ins must replicate service of process under Rule 4.**

It is also clear, from other rules, that the drafters could have required continued application of Rule 4(k) and did not do so. For instance, Rule 14(a)(1) requires service of a summons against an impleaded third-party defendant. Fed. R. Civ. P. 14(a)(1) ("A defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty...."). Rule 19(a)(1) limits involuntary joinder to parties that can be served with process. Fed. R. Civ. P. 25(a)(3) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined....")

Because Rules 14 and 19 address scenarios where a court asserts its authority over a new party for the first time, they understandably call for personal jurisdiction to be established in accordance with service of process. But when a new plaintiff intervenes under Rule 24(b), service of process is not contemplated, and Rule 24(c) directs service of a motion "as provided in Rule 5." These rules reinforce that service of process is achieved against a

---

that Rule 4 applies to FLSA opt-ins. 23 F.4th at 94 (finding the drafters of the Rule "could have simply said that additional plaintiffs may be added if they could have served a summons on a defendant consistent with Rule 4(k)(1)(A)" but "that was not the choice the drafters made").

defendant at the outset of the case, and that no textual basis exists for further service of process against that defendant in ensuing stages of the case.

Consistent with Rule 4, the longstanding principle is that personal jurisdiction is established through service of process at the outset of the case. *See, e.g., Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946) ("[T]he service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.") And once federal courts acquire jurisdiction, it continues throughout the case. *See* 4 Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* Civil § 1064 n. 16 (4th ed. 2015) ("It uniformly has been held that jurisdiction acquired at the beginning of the litigation will persist until the case's end regardless of whether the court maintains continuing physical power over the defendant."). This Court has no reason to depart from these principles now.[8]

---

[8]    Bimbo otherwise implies that the personal jurisdiction analysis in Rule 4(k) is an outright limitation on judicial power. That position is contradicted by Rule 82, which plainly states that the Civil Rules "do not extend or limit the jurisdiction of the district courts[.]" The Supreme Court also recognizes that, unlike subject matter jurisdiction, personal jurisdiction does not restrict federal courts' power. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (explaining that subject matter jurisdiction is "an Article III as well as a statutory requirement" that "functions as a restriction on federal power" but "[n]one of this is true with respect to personal jurisdiction"). Once a federal court acquires personal jurisdiction, it extends to procedural matters within the court's authority. *See*

Bimbo counters that, if Rule 4 is limited to the initial summons, then all federal claims will become a "backdoor" for personal jurisdiction. This argument, however, assumes jurisdictional problems that do not exist.

There is no appreciable danger that FLSA collective-action proceedings will become a so-called backdoor. FLSA opt-ins exercise a unique statutory right, which allows them to join collective action proceedings and vindicate wage violations alongside other similarly situated workers. As discussed earlier, when FLSA opt-ins are properly characterized as members in a spurious class action, jurisdictional complications are avoided. And because FLSA collective action is a unique proceeding, there is no indication that opt-ins' status would carry over to other types of federal claims.

Bimbo essentially posits that, after FLSA opt-ins join collective actions, they will use collective action proceedings as a vehicle for non-FLSA claims. But there is no indication that opt-ins are using the "backdoor" to assert non-FLSA claims against defendants. In effect, Bimbo uses a nonexistent problem to support its nontextual reading of Rule 4. This Court has good reason to reject the argument.

---

*Mallory v. Norfolk South Ry. Co.*, 600 U.S. 122, 145 (2023) (plurality opinion) ("[A] legion of precedents ... attach [personal] jurisdictional consequences to what some might dismiss as mere formalities ....").

### 3. Bimbo mischaracterizes case law on challenges to personal jurisdiction, which show that motions to dismiss for lack of personal jurisdiction are appropriately decided at the outset of the case.

Bimbo counters that "personal jurisdiction must be established over later-added claims," citing cases where a defendant moved to dismiss for lack of personal jurisdiction. But Bimbo mischaracterizes the rulings from these cases.

Consistent with Rules 12(b)(2) and 12(g), these cases involved a *single* motion to dismiss for lack of personal jurisdiction, decided at the outset of the case. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 902 (10th Cir. 2017) (reviewing motion to dismiss after jurisdictional discovery); *Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010) (reviewing motion to dismiss plaintiff's sixth amended complaint); *Suber v. VVP Servs., Inc.*, No. 21-2649, 2023 WL 115631 at *2 (2d Cir. Jan. 10, 2023) (proceeding with a motion to dismiss after plaintiff repleaded claims in a second amended complaint).

More importantly, in these cases, the defendant did not bring multiple claims to dismiss for lack of personal jurisdiction. The defendant also did not bring a motion to dismiss that challenged personal jurisdiction over "later-added claims." To the contrary, these cases all involved a threshold motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *See Old*

*Republic Ins. Co.*, 877 F.3d at 902; *Tamburo*, 601 F.3d at 699; *Suber*, 2023 WL 115631 at \*2. If anything, these cases reinforce Appellee's position that, in accordance with the Civil Rules, personal jurisdiction is decided at the outset of the case.

**C.** **As *BMS* Only Addresses State Courts' Authority to Exercise Personal Jurisdiction Under Fourteeth Amendment Due Process, It Does Not Extend to Federal Courts' Authority to Exercise Personal Jurisdiction in Federal Proceedings Under Fifth Amendment Due Process.**

Bimbo further contends that FLSA opt-ins must establish personal jurisdiction in accordance with the Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court* [*BMS*]. That case does not apply to FLSA collective-action proceedings, and to explain why, it is important to clarify its distinguishing characteristics. 582 U.S. 255 (2017).

**1.** **_BMS_ applied Fourteenth Amendment Due Process to state courts' exercise of personal jurisdiction over nonresident plaintiffs' claims. It did not address federal courts' authority in class action proceedings under federal law.**

Most significantly, *BMS* was not any kind of class action. The 592 plaintiffs, including 506 who resided outside California, brought personal-injury claims in California state courts. 582 U.S. at 259-60. With regard to the out-of-state plaintiffs' claims, the Supreme Court examined whether

45

California courts could exercise specific personal jurisdiction over BMS in accordance with Fourteenth Amendment Due Process. *Id.* at 261-62.

To answer that question, *BMS* considered "a variety of interests," such as "the interests of the forum State and the plaintiff in proceeding with the cause in the plaintiff's forum of choice[.]" 582 U.S. at 263 (quoting *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978)). The Court further observed that, with regard to states' "sovereign power to try causes in their courts[,]" this "federalism interest may be decisive." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). But the "primary concern," for purposes of Fourteenth Amendment Due Process, was "the burden on the defendant." *Id.* (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

To decide whether that burden comported with Due Process under principles of specific personal jurisdiction, *BMS* examined the connection between the nonresident plaintiffs' claims and the forum state. Holding the connection was insufficient for personal jurisdiction, the Court made two critical findings: the nonresident plaintiffs did not suffer harm in California, 582 U.S. at 265 ("[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State"); and the defendant's wrongdoing only occurred outside of California, *id.* ("the conduct giving rise to the nonresidents' claims occurred elsewhere").

46

**2.    Because Fifth Amendment Due Process governs federal courts' exercise of personal jurisdiction in proceedings under federal law, *BMS* does not apply to FLSA opt-ins' claims.**

In reaching this result, *BMS* emphasized that it was applying "settled principles of … jurisdiction[.]" 592 U.S. at 264. The Court also took care to limit its holding to the scope of Fourteenth Amendment Due Process in state courts, setting aside whether it applied to Fifth Amendment Due Process in federal courts. *Id.* at 268-69 ("[W]e leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."). The distinction is crucial.

Fourteenth Amendment Due Process rests on concerns with states' "sovereign power to try causes in their courts" and corresponding territorial limitations on states' exercise of power. *BMS*, 582 U.S. at 263 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 293). When assessing specific personal jurisdiction, Fourteenth Amendment Due Process accordingly examines the relationship between the defendant and the forum state. *See id.* at 264.

By comparison, Fifth Amendment Due Process is concerned with exercise of federal power, and it is based on the relationship between the defendant and the United States as a whole. *See, e.g., Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 620 (1992) (finding personal jurisdiction

satisfied Fifth Amendment Due Process when the defendant "purposefully availed itself of the privilege of conducting activities within the United States") (cleaned up) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

When a federal court exercises jurisdiction over a federal claim, there are no concerns about states overreaching their sovereign power. For that reason, this appeal does not implicate Fourteenth Amendment jurisdictional concerns. The issue is whether federal courts properly exercise jurisdiction, consistent with *Fifth Amendment* Due Process, over federal-law claims. *See, e.g., Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987) ("A federal court in a federal question case is not implementing any state's policy; it exercises the power of the United States.").

In this Fifth Amendment Due Process analysis, the central concern is whether federal-court jurisdiction satisfies "traditional notions of fair play and substantial justice." *Waldman v. Palestinian Liberation Organization*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

3. **Because the FLSA expressly authorizes collective action by similarly situated workers without regard for their states of residence, Bimbo had reason to expect such proceedings and the District Court acted within the bounds of Fifth Amendment Due Process.**

In *Waters v. Day & Zimmerman NPS, Inc.*, the First Circuit examined how Fifth Amendment Due Process applies to federal courts in FLSA collective-action proceedings. 23 F.4th 84 (1st Cir. 2022). Like the current case, the plaintiffs sought to represent an FLSA collective that included workers outside the forum state (in that case Massachusetts). *Id.* at 87.

As discussed beforehand, *Waters* distinguished a district court's initial exercise of personal jurisdiction, required under Rule 4(k), from a district court's authority to direct notice to FLSA collective-action members, derived from statutory law. 23 F.4th at 92-93. The First Circuit further determined that, because the district court's authority to issue FLSA notice arose under federal law, that procedure was governed by Fifth Amendment Due Process. *Id.* at 96.[9]

---

[9] The *Waters* court also decided that FLSA opt-ins are "parties to the action," but Appellees respectfully disagree with that holding. For purposes of establishing appellate jurisdiction, the First Circuit examined whether FLSA opt-ins were "parties to the action," as a prerequisite for appeal from dismissal for lack of personal jurisdiction. On this jurisdictional issue, the court found that opt-ins were parties, and that status allowed them to appeal. 23 F.4th at 90-91.

As discussed previously in this brief, Appellees take the position that FLSA opt-ins should be treated as class members, not as regular parties. The

Applying Fifth Amendment Due Process principles, *Waters* ruled that opt-ins have no independent obligation to accomplish service. The First Circuit further ruled that, if opt-ins were required to separately establish personal jurisdiction, this would thwart the FLSA and Congress' intent to establish a common federal proceeding encompassing multiple states. *Id.* at 97 ("The congressional debates … reveal a clear intent for a collective action … by one or more employees … regardless of the state in which they were employed.") (quoting 93 Cong. Rec. 2182 (1947)).

The District Court found this reasoning persuasive. Citing *Waters*, the District Court observed that Bimbo had reason to anticipate being haled into federal court. "And once a defendant is properly in federal court for an alleged violation of a federal statute, that federal statute (and the due process clause) governs the parameters of the lawsuit." (*See* SPA 14-15.) The District Court further determined:

> Unlike in [*BMS*], subjecting Bimbo to personal jurisdiction in Vermont for alleged FLSA violations does not allow plaintiffs to avail themselves of the laws of a state that the defendant did not expect. The out-of-state plaintiffs in [*BMS*] had no connection to California law, and BMS had no way of anticipating that [nonresidents] would assert violations of

procedural posture in *Waters* is also different from that before this Court, which is now reviewing the District Court's authority to conditionally certify an FLSA collective action. For those reasons, the party-status analysis in *Waters* is not germane to the questions before this Court.

> California law in California state courts.... Here,
> though, plaintiffs have properly haled Bimbo into
> federal court for an alleged violation of federal law.
> They now seek to join out-of-state distributors in the
> action for violations of the same law—a law that
> Bimbo knew applied in New York and Connecticut as
> well as Vermont.

(SPA 15-16.)

In accordance with Fifth Amendment Due Process, the District Court correctly examined whether Bimbo had reason to expect being haled into a federal proceeding encompassing workers in multiple states. Because the FLSA authorizes collective-action proceedings by similarly situated workers without regard for their states of residence, Bimbo had reason to expect such proceedings and due process was satisfied.[10] *Cf. Waters*, 23 F.4th at 96-97. The District Court also correctly determined that, because FLSA collective-action proceedings are grounded in federal law, concerns about state overreach do not apply. *Cf. BMS*, 582 U.S. at 263 (discussing how Fourteenth

---

[10]    This nexus is necessarily required by the FLSA. To determine whether workers are "similarly situated" under 29 U.S.C. § 216(b), the named plaintiffs and opt-ins must "share one or more similar questions of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 521. Through this nexus, workers present a unitary controversy that is subject to federal jurisdiction. This nexus also reinforces why spurious class action is the best framework for assessing the due process and jurisdictional concerns in this case.

Amendment Due Process limits states' "sovereign power to try causes in their courts").

Bimbo had reason to expect being haled into a federal forum to litigate violations of federal law that, under express terms of the FLSA, encompass similarly situated workers in multiple states. And when the District Court proceeded with FLSA collective action, it acted within its statutory authority and complied with the bounds of Fifth Amendment Due Process. Such proceedings are contemplated by the FLSA and satisfy traditional notions of fair play and substantial justice. *Cf. Waldman*, 835 F.3d at 328. For those reasons, *BMS* does not apply and the District Court should be affirmed.

**4.   Because they failed to properly examine spurious class actions, the procedures for service of process, or Fifth Amendment Due Process, the appellate decisions that applied *BMS* to FLSA opt-ins were wrongly decided.**

Bimbo makes much of the four appellate decisions that have applied *BMS* to FLSA opt-ins. Appellees respectfully disagree with those decisions, and this Circuit has sound reason to take a different approach.

Bimbo's arguments are largely drawn from three cases: *Canaday v. Federal Express Corp.*, 9 F.4th 392 (6th Cir. 2021); *Fischer v. Federal Express Corp.*, 42 F.4th 366 (3d Cir. 2022); and *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718 (7th Cir. 2024). None assessed the historical basis of FLSA collective action proceedings in spurious class actions. *See Canaday*, 9 F.4th

at 413-14 (Donald, J., dissenting); *Fischer*, 42 F.4th at 379. They instead proceeded on the faulty premise, perpetuated by Bimbo here, that FLSA opt-ins are like regular plaintiffs. *See Vanegas*, 113 F.4th at 733-34 (Rovner, J., dissenting). When that faulty premise is corrected, FLSA opt-ins are properly deemed class members, bringing them outside the scope of *BMS*.

These cases also wrongly applied Rule 4. Notwithstanding the plain language of that rule and the framework supplied by other Civil Rules, the courts wrongly required FLSA opt-ins to satisfy jurisdictional requirements for service of summons. In doing so, these decisions conflated Fourteenth Amendment Due Process with Fifth Amendment Due Process, improperly enforcing state-court restraints on federal courts exercising their statutory authority under the FLSA. *See Canaday*, 9 F.th at 407-09 (Donald, J. dissenting); *Fischer*, 42 F.4th at 382; *Vanegas*, 113 F.4th at 738 (Rovner, J., dissenting).

Compared to those cases, Bimbo devotes scant discussion to the Eighth Circuit decision in *Vallone v. CJS Solutions Group*. 9 F.4th 861 (8th Cir. 2021). The likely reason is that *Vallone* devotes a bare paragraph to the issues raised in this appeal. The Eighth Circuit says nothing about FLSA opt-ins' status or whether they should comply with Rule 4. It also assumed, without further explanation, that FLSA opt-ins are bound by the due process analysis

in *BMS*. *Vallone* does not contribute to the analysis this Circuit will need to undertake on this appeal.

**D. To Achieve the Policy and Congressional Intent Underlying the FLSA, Collective Actions Should Encompass Similarly Situated Workers in Multiple States.**

When opt-ins are treated as class members for purposes of jurisdiction, this not only honors the historical foundation for FLSA collective actions, it furthers the remedial purposes of the law. As stated by Congress, its purpose was to redress "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).

**1. As recognized by the Supreme Court, Congress intended efficient, consolidated FLSA collective actions covering workers harmed by wrongful wage practices in multiple states.**

The Supreme Court has stressed that "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found.*, 471 U.S. at 296 (quoting *Powell*, 339 U.S. at 516). For that reason, the FLSA is "construed ... liberally to apply to the furthest reaches consistent with congressional direction[.]" *Id.* (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959) (quotation omitted).

Consistent with these concerns, federal courts have repeatedly warned against individualized jurisdictional analysis of FLSA opt-ins. They cite the national reach of the law, which necessarily contemplates proceedings that encompass workers in multiple states. State-by-state jurisdictional analysis would cripple workers' ability to aggregate their claims through collective action, splintering their claims into multiple courts and fostering judicial inefficiency, if not frustrating access to relief altogether. *See, e.g., Waters*, 23 F.4th at 96-97 (finding that key purposes of FLSA collective action would be frustrated by excluding out-of-state workers).

In its conditional certification order, the District Court was mindful of this concern:

> The collective action provision clearly indicates Congressional intent to consolidate and standardize FLSA litigation—provided that the employer-defendant has been constitutionally haled into a "court of competent jurisdiction" in the first place. [29 U.S.C. § 216(b)]; *see also Waters*, 23 F.4th at 96-97 (explaining that "the FLSA and its legislative history show that Congress created the collective action mechanism to enable all affected employees working for a single employer to bring suit in a single, collective action.")....

(SPA 15.)

Other federal courts echo that reasoning. *See, e.g., Mason*, 2019 WL 2088609 at *6 ("[T]he collective action allegations here arise under a federal

statute intended to address wage-and-hour practices nationwide.... Applying [*BMS*] ... 'would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.'") (citing *Swamy v. Title Source, Inc.*, No. 17-1175, 2017 WL 5196780 at *2 (Nov. 10, 2017)). Applying "liberal construction" to the FLSA, *Tony & Susan Alamo Found.*, 471 U.S. at 296, these considerations favor an approach to collective-action proceedings that effectively and efficiently delivers relief to workers.

> **2.  Under the FLSA economic realities test that governs the legal relationship between Bimbo and its distributors, this case has impacts that go beyond Vermont to other states.**

Appellees' case cogently illustrates why workers need multi-state FLSA proceedings. The underlying issue in the case is whether Appellees and other Bimbo distributors are properly classified as employees or independent contractors. That question is decided under an "economic realities" test: whether as a matter of economic reality, the workers are in business for themselves or depend on the employer for their livelihood. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988).

When determining the economic realities, relevant factors include (1) the degree of control that the employer exercises over the workers; (2) the workers' opportunity to profit or loss and their investment in the business;

56

(3) the degree of skill and initiative required to perform the work; (4) the permanence and duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. *Brock*, 840 F.2d at 1060. These factors are not exclusive, and courts must consider the totality of the circumstances, avoiding "mechanical application of the test[.]" *Id.*

Even under a preliminary assessment of those factors, the court must look past Vermont and consider the realities of Bimbo's business practices throughout the region. The record shows, for instance, that Bimbo managers were assigned a single territory covering distributors in both New York and Vermont. (JA 627-29, 632-34, 1547-65.) Bimbo issues "playbooks" for the merchandising and sale of its products in major grocery stores like Shaw's and Hannaford, which cover distributors in multiple northeastern states. (*See, e.g.,* JA 1562-63.) Bimbo has also implemented a nationwide ordering system for all its distributors. (JA 432-33.)[11]

---

[11] Bimbo contends that Appellees have not argued, "much less shown," that its out-of-state distributors have connections to Vermont. That argument misrepresents the record in the District Court, recited again in this brief, where Appellees did in fact supply proof regarding the connections between Bimbo distributors in Connecticut, New York, and Vermont. (*See* Dkt. 78 at *9-*10.)

In addition, this appeal arises out of a motion for FLSA conditional certification. As this Circuit directed in *Scott v. Chipotle Mexican Grill, Inc.*, at the conditional certification phase, named plaintiffs need only make a

These facts show that questions regarding Bimbo distributors' profit, control, and business opportunity do not conveniently stop at state lines. They also show Bimbo's common practices have impacts beyond Vermont, affecting Bimbo distributors in other northeastern states. Bimbo asks this Court to disregard that interstate imprint, fracturing what would otherwise be a unitary proceeding into multiple states.[12]

With due regard for the national reach of the FLSA and Congressional intent in supplying collective-action procedures, the law should be construed in a way that fosters collective relief, not frustrates it. Bimbo's arguments run against the FLSA's roots in spurious class action, imposing jurisdictional obstacles that are not supported by the law or the Civil Rules. This Court has

---

"modest factual showing that they and others … were victims of a common policy or plan that violated the law." 954 F.3d at 515 (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2020)). Because Appellees have only litigated FLSA conditional certification and have not undertaken significant discovery, the record has yet to be fully developed.

[12]     Hedging against that consideration, Bimbo argues that nationwide FLSA proceedings would still be possible in a state where courts can exercise general personal jurisdiction. But many assumptions are implicit in that scenario. Workers may not be able to show that employers engage in nationwide employment practices. For a company like Bimbo, which operates out of regional warehouses and deals with regionalized grocery chains, such variations may prevent collective action in the state where it is headquartered. And workers may not be able to shoulder the cost of litigating in a distant forum either.

good reason to reject those arguments and allow the District Court to proceed with notice to distributors in Connecticut, New York, and Vermont.

## **<u>CONCLUSION</u>**

Based on the foregoing, Appellees respectfully ask this Court to affirm the District Court's conditional certification order in its entirety and to remand this case back to the District Court for further proceedings.

Dated June 6, 2025.

/s **Scott Moriarity**

Scott Moriarity
Wanta Thome PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55401
612-252-3570
samoriarity@wantathome.com

Merrill E. Bent
Woolington, Campbell, Bent &
Stasny, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
802-362-2560
merrill@greenmtlaw.com

***Counsel for Plaintiffs-Appellees***

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Appellate Rule 32(a)(7)(B)(i) because it contains **10,227** words, excluding items exempted under Appellate Rule 32(f). This brief complies with the typeface and style requirements of Appellate Rule 32(a)(5) and (6) because this brief has been prepared in Microsoft Word in a proportionally spaced 14-point Georgia font.

Dated June 6, 2025.


/s **Scott Moriarity**
Scott Moriarity
Attorney for Plaintiffs-Appellees