24-3112-cv
*Provencher, et al. v. Bimbo Foods Bakeries Distribution LLC, et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

August Term, 2025

(Argued: February 24, 2026     Decided: May 4, 2026)

Docket No. 24-3112-cv

---

ARTHUR PROVENCHER, individually and on behalf of all similarly situated individuals, MICHAEL MCGUIRE, individually and on behalf of all similarly situated individuals,

*Plaintiffs-Appellees,*

— v. —

BIMBO FOODS BAKERIES DISTRIBUTION LLC, BIMBO BAKERIES USA, INC.,

*Defendants-Appellants.*[*]

---

B e f o r e:

LYNCH, LOHIER, and MENASHI, *Circuit Judges.*

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Defendants-appellants Bimbo Foods Bakeries Distribution LLC and Bimbo Bakeries USA, Inc. appeal from the district court's determination that it had personal jurisdiction over the Fair Labor Standards Act claims of potential plaintiffs who resided outside Vermont, where the district court is located. The district court certified the issue for interlocutory appeal, and we accepted. For the reasons below, we conclude that the current record does not support the district court's exercise of personal jurisdiction over the out-of-state plaintiffs' claims. We **REVERSE** the district court's contrary ruling and **REMAND** the case for further proceedings consistent with this opinion.

————————————

JAMES D. NELSON, Morgan, Lewis & Bockius LLP, Washington D.C. (Randall M. Levine, Brendan J. Anderson, Washington D.C.; Joseph Bias, Los Angeles, CA, *on the brief*), *for Defendants-Appellants*.

SCOTT MORIARITY, Wanta Thome PLC, Minneapolis, MN (Merrill E. Bent, Woolington, Campbell, Bent & Stasny, P.C., Manchester Center, VT, *on the brief*), *for Plaintiffs-Appellees*.

Catherine K. Ruckelshaus, Edward Tuddenham, National Employment Law Project, New York, NY, *for Amicus Curiae* National Employment Law Project, *in support of Plaintiffs-Appellees*.

————————————

GERARD E. LYNCH, *Circuit Judge*:

Defendants-appellants Bimbo Foods Bakeries Distribution LLC and Bimbo Bakeries USA, Inc. ("Bimbo") sell baked goods to retailers through delivery drivers, or distributors, like plaintiffs-appellees Arthur Provencher and Michael

McGuire.[1] Plaintiffs sued Bimbo for alleged violations of the Fair Labor

Standards Act ("FLSA"), on behalf of themselves and others similarly situated.

The district court authorized plaintiffs to send notices to the latter group,

including distributors based outside Vermont, the state where plaintiffs reside

and the district court is located. Bimbo sought an interlocutory appeal

challenging the court's authority to do so, arguing that it lacked personal

jurisdiction over the claims of those out-of-state distributors.

We agree. We therefore **REVERSE** the district court's contrary ruling and

**REMAND** the case for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiffs Provencher and McGuire reside in Vermont and deliver baked

goods there for Bimbo.[2] On a typical day, they arrive at Bimbo's Vermont

warehouse, load their vehicles with Bimbo's products, drive to Bimbo's Vermont

retailers, and stock the shelves there with those products. They routinely work

over 40 hours a week but do not receive overtime compensation because Bimbo

---

[1] Another plaintiff, Ronald Martel, voluntarily withdrew his claims and is not part of the appeal.

[2] Both Bimbo defendants are incorporated in Delaware with their principal place of business in Pennsylvania.

3

classifies them as independent contractors, not as employees protected by the FLSA and Vermont employment law.

On October 28, 2022, plaintiffs sued Bimbo in the United States District Court for the District of Vermont, both individually and on behalf of other similarly situated distributors. Like many such actions, the suit proceeded in a "hybrid" manner, pursuing the FLSA claims as a putative collective action under 29 U.S.C. § 216(b) and the Vermont state law claims as a putative class action under Rule 23 of the Federal Rules of Civil Procedure. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020).

On January 23, 2024, following other motion practice not relevant to the issue before us, plaintiffs moved to conditionally certify the FLSA collective action and to permit them to notify similarly situated distributors in Vermont, Connecticut, and New York about the action and the opportunity to opt into it. Bimbo opposed that motion. It argued, in relevant part, that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), prevented the district court from exercising personal jurisdiction over it with respect to any claims that distributors outside Vermont might assert against it. In response, plaintiffs distinguished *Bristol-Myers*, which concerned a state

court's adjudication of state law claims, as inapplicable to the current action, which involved federal claims in a federal court.

The district court agreed with plaintiffs. It held that Bimbo had sufficient contacts with Vermont to justify the court's exercise of personal jurisdiction over it. The assertion of personal jurisdiction did not run afoul of *Bristol-Myers*, the district court explained, because the primary concern motivating that decision – that a contrary rule would permit the plaintiffs to cherry-pick the laws of a state in which the defendant did not expect to litigate – was absent here.[3] Plaintiffs asserted claims under a federal statute, which applies nationwide, in a federal court located in Vermont, towards which Bimbo had purposefully directed its activities. After concluding that it could exercise personal jurisdiction over the claims of putative out-of-state plaintiffs, the district court accepted plaintiffs' initial showing that other distributors in Vermont, Connecticut, and New York were similarly situated, and authorized plaintiffs to notify those distributors.

At Bimbo's request, the district court stayed its decision and certified the

---

[3] We note in passing that while federal law is ultimately unitary because the Supreme Court can review lower-court decisions to ensure uniformity, litigants have been known to forum shop to capitalize on discrepancies between precedents in different circuits.

dispute over personal jurisdiction for an interlocutory appeal under 28 U.S.C.

§ 1292(b). We accepted the interlocutory appeal, *see* Motion Order, *Bimbo Bakeries USA, Inc. v. Provencher*, No. 24-1601 (2d Cir. Nov. 26, 2024), Dkt. No. 29, and now reverse.

## DISCUSSION

This case concerns a district court's exercise of personal jurisdiction over out-of-state plaintiffs' FLSA claims against an out-of-state defendant that has been properly subject to the court's jurisdiction with respect to similar claims advanced by in-state plaintiffs. Joining the majority of our sister circuits that have confronted the issue, we hold that the court's jurisdictional power does not reach that far.[4]

We review the district court's legal conclusions regarding its power to exercise personal jurisdiction *de novo*. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).

---

[4] *See Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 397 (6th Cir. 2021); *Vallone v. CJS Solutions Group, LLC*, 9 F.4th 861, 865–66 (8th Cir. 2021); *Fischer v. Federal Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022); *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 723 (7th Cir. 2024); *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 682 (9th Cir. 2025). *But see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 92 (1st Cir. 2022).

A district court may exercise personal jurisdiction over an out-of-state defendant only if (1) the plaintiff has properly served "process upon the defendant"; (2) a state or federal statutory basis for personal jurisdiction "renders such service of process effective"; and (3) the exercise of personal jurisdiction "comport[s] with constitutional due process principles." *NLRB v. Universal Smart Contracts, LLC*, 166 F.4th 304, 314 (2d Cir. 2026) (internal quotation marks omitted). Apart from cases in which Congress has authorized nationwide service of process in connection with a federal claim (as it has not here), a properly served corporate defendant may be subject to two types of personal jurisdiction: specific (or "case-linked") jurisdiction, which requires that the plaintiff's "cause of action . . . arise[] out of the defendant's activities in a state," or general (or "all-purpose") jurisdiction, which "permits a court to adjudicate any cause of action" against the defendant. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Where, as here, plaintiffs are relying on specific jurisdiction, they must make the requisite showing "with respect to each claim asserted." *Sullivan v. UBS AG*, 149 F.4th 206, 217 (2d Cir. 2025) (internal quotation marks omitted).

Bimbo does not challenge the district court's exercise of specific jurisdiction to adjudicate the FLSA claims of plaintiffs or any Vermont-based

distributors who opt into the litigation. It argues, however, that the district court lacks a statutory basis for personal jurisdiction over similar FLSA claims that distributors outside Vermont may assert.

We agree. Rule 4(k) of the Federal Rules of Civil Procedure "lists the bases available in federal courts" on which the effective service of process establishes personal jurisdiction. *Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 75 (2d Cir. 2023). Those bases include, in relevant part, a defendant's amenability "to the jurisdiction of a court of general jurisdiction in the state where the district court is located," Fed. R. Civ. P. 4(k)(1)(A), or "a federal statute" that specifically authorizes service of process, Fed. R. Civ. P. 4(k)(1)(C).

The FLSA contains no such authorization. Unlike some of its contemporary statutes, the original FLSA, enacted in 1938, did not provide for nationwide service of process. *Compare* 15 U.S.C. §§ 77v (1933), 78aa (1934) (authorizing process in securities actions to be served in any district "wherein the defendant is found"), *with* 29 U.S.C. § 216(b) (1938) (containing no such language for FLSA actions). To this day, the FLSA requires plaintiffs to bring their case "in any Federal or State court of *competent* jurisdiction." 29 U.S.C. § 216(b) (current) (emphasis added).

"In the absence of a federal statute specifically directing otherwise," the district court can exercise only as much personal jurisdiction as is granted to its state counterpart. *Brown*, 814 F.3d at 624; *see* Fed. R. Civ. P. 4(k)(1)(A). Vermont's long-arm statute authorizes Vermont state courts to exercise personal jurisdiction "over nonresident defendants to the full extent permitted by the Due Process Clause" of the Fourteenth Amendment. *State v. Meta Platforms, Inc.*, 346 A.3d 489, 498 (Vt. 2025) (internal quotation marks omitted), citing Vt. Stat. Ann. tit. 12, § 913(b). That constitutional limitation thus also charts the boundaries of the district court's jurisdictional power.

The Supreme Court delineated those boundaries in *Bristol-Myers*. 582 U.S. at 264–66. There, over 600 plaintiffs filed eight separate complaints in California state court against Bristol-Myers for alleged injuries caused by its drug, Plavix. *Id.* at 259. As the complaints shared "a common question of fact or law," the California court aggregated all plaintiffs' claims into a mass action. Cal. Civ. Proc. Code § 404 (governing coordination of civil actions); *Plavix Product and Marketing Cases*, No. JCCP4748, 2013 WL 6150251, at *1 (Cal. Super. Ct. Sep. 23, 2013) (describing the cases as "coordinated"), *reversed by Bristol-Myers*, 582 U.S. 255. As only 86 plaintiffs were California residents, Bristol-Myers moved to quash service

of summons on the nonresidents' claims, which the state court denied. *Bristol-Myers*, 582 U.S. at 259.

The Supreme Court reversed, holding that the California court lacked personal jurisdiction over the nonresident plaintiffs' claims under "settled principles regarding specific jurisdiction." *Id.* at 264. Because the nonresident plaintiffs did not allege that they obtained Plavix, or suffered or received treatment for the injuries it caused, in the state of California, their claims did not "arise out of or relate to" Bristol-Myers's contacts with California. *Id.* at 259, 262 (internal quotation marks omitted and alterations adopted). Bristol-Myers's "relationship with [] third part[ies]" – the resident plaintiffs who obtained or ingested Plavix in California – "[wa]s an insufficient basis for jurisdiction" over the nonresident plaintiffs' claims, even though the claims alleged similar injuries. *Id.* at 265 (internal quotation marks omitted).

So too here. Nothing in the record suggests that Bimbo's Connecticut or New York distributors suffered FLSA violations arising from Bimbo's contacts with Vermont. Plaintiffs argued below, but do not press on appeal, that Bimbo's use of the same distribution protocol across the three states supplied a nexus between the in-state and out-of-state distributors. But the uniformity of the

10

corporate practice has no more jurisdictional significance than the chemical consistency of Plavix's ingredients. It may give rise to similar theories or claims but cannot transform out-of-state dealings into in-state contacts.

Plaintiffs raise on appeal three arguments to avoid *Bristol-Myers*'s conclusion. First, plaintiffs argue that *Bristol-Myers* is distinguishable because it concerned the Fourteenth rather than Fifth Amendment. *Bristol-Myers* expressly "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" like the court below. *Id.* at 269. Since *Bristol-Myers*, the Supreme Court has recognized that "the Due Process Clause of the Fifth Amendment . . . permits a more flexible jurisdictional inquiry" when the federal courts assess their personal jurisdiction over a defendant than that required by the Fourteenth Amendment, which constrains the judicial power of the states. *Fuld v. Palestine Liberation Organization*, 606 U.S. 1, 16 (2025).

The Fifth Amendment, however, does not come into play here. While the Constitution authorizes the *federal government* to exercise personal jurisdiction more broadly, *federal district courts* (which Congress is not constitutionally required to create at all) can assert their authority only to the extent that

Congress has allowed. *See* U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested . . . in such inferior Courts as the Congress *may* from time to time ordain and establish." (emphasis added)); *Palmore v. United States*, 411 U.S. 389, 401 (1973) (noting that Congress is "not constitutionally required to create inferior Art. III courts"); *see also Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 102–03 (1987) (affirming the district court's refusal to exercise personal jurisdiction absent congressional authorization even though the exercise would arguably comport with the Fifth Amendment's Due Process Clause). Congress, by way of authorizing the Supreme Court to promulgate rules, 28 U.S.C. § 2072(a), has allowed district courts to assert *in personam* jurisdiction over a defendant subject to the corresponding state courts' jurisdiction, Fed. R. Civ. P. 4(k)(1). In Vermont, the state court is bounded by the Fourteenth Amendment (inherently, *see Bristol-Myers*, 582 U.S. at 261, and as expressly provided by Vermont's long-arm statute, *see Meta Platforms*, 346 A.3d at 498), and the federal district court's *in personam* jurisdiction is therefore subject to the same constraint. While Congress *could* authorize district courts to exercise personal jurisdiction more broadly under the Fifth Amendment, it has not done so in a statute or rule that applies to this case.

Second, plaintiffs and *amicus* urge us to analogize FLSA collective actions to two forms of class actions: (1) the modern class action under Rule 23(b)(3), and (2) the now-obsolete "spurious class action" once recognized in the original Rule 23(a)(3). *Compare* Fed. R. Civ. P. 23(b)(3), *with* Fed. R. Civ. P. 23(a)(3) (1937); 7A C. Wright & A. Miller, Federal Practice & Procedure - Civil, § 1752 (4th ed. 2025) (explaining that "the 1966 amendment repudiates the 'true,' 'hybrid,' and 'spurious' scheme" in the original Rule 23). *Bristol-Myers*, as Justice Sotomayor noted in her dissent, did not dictate whether personal jurisdiction must be individually established in class actions where "not all of [the class members] were injured" in the forum state. 582 U.S. at 278 n.4 (Sotomayor, J., dissenting).[5]

The analogy of FLSA collective actions to modern Rule 23(b)(3) class actions is foreclosed by our precedent. In *Scott*, we permitted FLSA claims to proceed collectively despite "individualized issues" that defeated class certification under Rule 23. 954 F.3d at 513–14, 521. That is because "the FLSA's

---

[5] Several of our sister Circuits have held that it need not be. *See, e.g., Lyngaas v. Curaden AG*, 992 F.3d 412, 433 (6th Cir. 2021); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020); *Fischer*, 42 F.4th at 375. *But see Molock v. Whole Foods Market Group*, 952 F.3d 293, 300–10 (D.C. Cir. 2020) (Silberman, J., dissenting) (arguing that personal jurisdiction must be demonstrated for out-of-state class members); *Lyngaas*, 992 F.3d at 438–46 (Thapar, J., concurring in part and dissenting in part) (same).

'similarly situated' requirement is 'independent of, and unrelated to' Rule 23's [predominance] requirements," as evinced by "the language and structure of § 216(b) and the modern Rule 23, which bear little resemblance to each other." *Id.* at 518–19, quoting *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004).

There is a sufficient contrast between the unity created by a Rule 23(b)(3) class action and the loose form of an FLSA collective action. Once a putative class is certified, the class "acquire[s] a legal status separate from the interest asserted by [the named plaintiff]" or by the absent class members as individuals. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). The class asserts only common questions of law or fact that predominate over individual discrepancies. Fed. R. Civ. P. 23(a)(2)–(3), (b)(3). A judgment resolving those questions binds all class members who have not affirmatively opted out. *See* Fed. R. Civ. P. 23(c)(3)(B).

The unitary class claims thus might be understood to draw the spotlight of jurisdictional analysis away from any class member's personal circumstances. A class claim, for example, remains justiciable even after the class representative's claim becomes moot. *See Sosna*, 419 U.S. at 399, 401. We need not decide here whether personal jurisdiction over a class claim would be defeated by a gap in a court's jurisdiction over an out-of-state class member's claims; the nature of a

14

class claim is sufficiently distinguishable from an FLSA collective action that the answer to that question does not control the outcome in this case.

In contrast to a class action, an FLSA collective action remains a mosaic of individual claims even after conditional certification, which "does not produce a class with an independent legal status." *Genesis Health Corp. v. Symczyk*, 569 U.S. 66, 75 (2013), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016). Any similarly situated potential plaintiffs who opt into the action may bring their unique claims against the defendant, subject to distinctive defenses, and appeal any unfavorable rulings separately from other named or opt-in plaintiffs. *See Scott*, 954 F.3d at 513–14, 521; 29 U.S.C. §§ 256–57 (differentiating, for tolling purposes, the commencement dates of actions for initial and opt-in plaintiffs); *Gibbons v. Equitable Life Asuurance Society of United States*, 173 F.2d 337, 339 (2d Cir. 1949) (entertaining an appeal from the dismissal of some, but not all, FLSA plaintiffs' claims because the dismissed claims "are in legal theory separate . . . and could be [adjudicated] without reference to the disposition of the others"); *see also Mickles v. Country Club Inc.*, 887 F.3d 1270, 1274–75, 1278–79 (11th Cir. 2018) (permitting opt-in plaintiffs excluded from an approved settlement between the named plaintiffs and the defendant to appeal

15

the approval separate from the named plaintiffs). Any potential plaintiffs who do not opt in preserve their own claims, over which the collective action's judgment has no *res judicata* effect. *See Scott*, 954 F.3d at 515, 519.

Because each FLSA plaintiff's personal interests remain front and center, the jurisdictional inquiry revolves around individual claims. Unlike a class representative, who can continue to represent the class even after her own claim becomes moot, a named plaintiff whose FLSA claim becomes moot cannot proceed collectively. *Compare Genesis Health*, 569 U.S. at 73–74 ("In the absence of any claimant's opting in, [the named plaintiff]'s [FLSA] suit became moot when her individual claim became moot . . . ."), *with Sosna*, 419 U.S. at 401 (permitting class action to proceed despite mootness of class representative's claim); *cf. Klein v. Qlik Technologies*, 906 F.3d 215, 224 (2d Cir. 2018) (permitting a derivative action to proceed despite mootness of the named plaintiff's claim because a derivative action resembles a class action, not an FLSA collective action). Similarly here, the district court's proper exercise of personal jurisdiction over the Vermont plaintiffs' FLSA claims does not sweep in those of the out-of-state distributors.

Plaintiffs' alternative analogy of FLSA collective actions to spurious class actions cuts closer. A spurious class action was one of the three types of class

16

actions described in the original Rule 23. *See* Fed R. Civ. P. 23(a) (1937). Under

that rule, when "persons constituting a class [we]re so numerous as to make it

impracticable to bring them all before [a] court," they could pursue (1) the true

class action, advancing "joint, or common, or secondary" rights; (2) the hybrid

class action, claiming "several" rights "related to specific property"; or (3) the

spurious class action, asserting "several" rights "affected by a common question"

and seeking "common relief." *Id.*; *see also Eisen v. Carlisle & Jacquelin*, 391 F.2d 555,

560 (2d Cir. 1968). As an FLSA collective action often involves common questions

affecting similarly situated employees, we have recognized that the FLSA

authorizes "a representative or class action – of the so-called 'spurious' form, not

binding upon nonappearing parties." *McComb v. Frank-Scerbo & Sons*, 177 F.2d

137, 140 (2d Cir. 1949).

But that similarity does not advance plaintiffs' theory that opt-in FLSA

plaintiffs need not independently demonstrate personal jurisdiction, because no

authority from the era of the original Rule 23 supports the proposition that

intervenors in a spurious class action did not have to do so. Rather, a spurious

class action "under [the original Rule] 23(a)(3) [wa]s, in effect, but a congeries of

separate suits so that each claimant must, as to his [or her] own claim, meet the

17

jurisdictional requirements." *Steele v. Guaranty Trust Co. of New York*, 164 F.2d 387, 388 (2d Cir. 1947). Unlike its true and hybrid siblings, the spurious class action sprouted from only the existence of one or more common questions and permitted individual claims, and its judgment bound only the original parties and any intervenors. *See* Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendment. That the spurious class action was once lumped into the same rule with the prototypes of the modern class action does not suggest that it should be today, or that it ever was, treated in all respects the same as a true class action. After all, a spurious class action was "spurious," a name it had fully earned. *See Spurious*, Oxford English Dictionary (1st ed. 1933) (defining "spurious" as "[s]uperficially resembling or simulating . . . something; not true or genuine; false, sham, counterfeit").

The design of the spurious class action mirrors modern joinder and consolidation mechanisms more than it does the true class action. *See Eisen*, 391 F.2d at 560 (interpreting "the spurious class action . . . as merely a permissive joinder device"); Fed. R. Civ. P. 20(a)(1) (permitting joinder where "any question of law or fact common to all plaintiffs will arise in the action"); Fed. R. Civ. P. 42(a) (authorizing consolidation of "actions before the court [that] involve a

18

common question of law or fact"); *see also Hall v. Hall*, 584 U.S. 59, 66 (2018) (explaining that consolidation means the "joining," but not "merger," of the individual cases, which "retain[] [their] independent character"). As discussed above, *Bristol-Myers* arose out of a case aggregated under California's consolidation statute, which is similar to Rule 42. *See* Cal. Civ. Proc. Code § 404; *In re State Water Board Cases*, 316 Cal. Rptr. 3d 170, 178 n.8 (Cal. Ct. App. 2023) (analogizing § 404 to Rule 42). If the spurious class action were alive today, *Bristol-Myers*'s mandate of claim-by-claim assessment of specific jurisdiction would apply there with equal force.

Plaintiffs cite a handful of cases from district courts outside this circuit that allowed intervenors who could not meet *diversity jurisdiction* requirements to join a spurious class action. *See, e.g., Shipley v. Pittsburgh & L.E.R. Co.*, 70 F. Supp. 870, 876 (W.D. Pa. 1947) (permitting intervention despite the lack of diversity between the intervenors and the defendant and the insufficient amount of the intervenors' claims); *Berman v. Herrick*, 30 F.R.D. 9, 12 (E.D. Pa. 1962) (similar); *cf. Zachman v. Erwin*, 186 F. Supp. 681, 689 (S.D. Tex. 1959) (noting that a spurious class action mechanism is unnecessary in a Securities Act case because the statute confers subject matter jurisdiction "irrespective of the amount in controversy or the

citizenship of the parties"). In permitting the intervenors to do so, those courts relied on the treatise of Professor Moore, the architect of the original Rule 23, who envisioned that the spurious class action device "offer[ed] the possibility of cleaning up [a] litigious situation" by relieving intervenors of the obligation to demonstrate "the requisite diversity [of citizenship] and amount in controversy." 2 James W. Moore & Joseph Friedman, Moore's Federal Practice, § 23.04(3), 2245 (1st ed. 1938).

This Court, however, has never endorsed that rule. In *Steele*, the original plaintiff satisfied the diversity jurisdiction requirements, *see York v. Guaranty Trust Co. of New York*, 143 F.2d 503, 512 (2d Cir. 1944), and pursued a spurious class action, *Steele*, 164 F.2d at 388. We nonetheless denied intervention because four of the five intervenors could not "show[] the requisite jurisdictional amount," and the remaining one was not diverse from the defendant. *Id.* at 388–89. Each intervenor in a spurious class action, as we understood it, was no less responsible for demonstrating jurisdiction than the plaintiffs bringing their own suits (or, for that matter, joining under Rule 20, or opting into an FLSA

collective action).[6] Plaintiffs' reliance on the analogy to class actions – genuine or spurious – is thus unavailing.

Finally, plaintiffs argue, and one of our sister circuits has agreed, that Rule 4 governs solely the "service of a summons," not "the jurisdiction of the federal courts after a summons has been served." *Waters*, 23 F.4th at 94. Because plaintiffs have properly served Bimbo with a summons, the argument goes, the later-added opt-in plaintiffs need not do so. *See id.* Their claims are hence not subject to Rule 4(k)(1)(A)'s jurisdictional limitations. *See id.* at 94, 96.

That argument misunderstands Rule 4(k)'s role in a district court's

---

[6] That claimant-by-claimant analysis in diversity jurisdiction was adopted by the Supreme Court with regard to the amount-in-controversy requirement, until Congress authorized supplemental jurisdiction over smaller claims arising out of the same case or controversy. *See Zahn v. International Paper Co.*, 414 U.S. 291, 296–98 (1973) (citing *Steele* approvingly and limiting the district court's jurisdiction to "the claims of only those class action plaintiffs whose individual cases satisfied the jurisdictional-amount requirement"), *superseded by* 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 566–67 (2005) (holding that "§ 1367 by its plain text overruled . . . *Zahn* and authorized supplemental jurisdiction over all claims by diverse parties arising out of the same Article III case or controversy, subject only to enumerated exceptions"). Moreover, even under the doctrine of ancillary subject matter jurisdiction that Professor Moore sought to apply to spurious class actions, *see* James W. Moore & Marcus Cohn, *Federal Class Actions*, 32 Ill. L. Rev. 307, 318 n.88, 320–21 (1937–38), a court still needed personal jurisdiction over additional claims, *see In re Indiana Transportation Co.*, 244 U.S. 456, 458 (1917).

determination of its jurisdictional authority. As we explained in *Brown*, under

Rule 4(k), titled "'Territorial Limits of Effective Service,'" "service of process does

not by itself confer personal jurisdiction over a defendant." 814 F.3d at 634 n.13,

quoting Fed. R. Civ. P. 4(k); *see also* Fed. R. Civ. P. 4 advisory committee's notes to

1993 amendment ("Service of the summons under this subdivision does not

conclusively establish the jurisdiction of the court over the person of the

defendant."). Rather, Rule 4-compliant service of process "is the procedure by

which a court having venue and jurisdiction of the subject matter of the suit

asserts jurisdiction over the person of the party served," *Mississippi Publishing

Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946), and a prerequisite to doing so, *see

Omni Capital*, 484 U.S. at 104. Because the district court must have authority over

each claim it resolves, *see Bristol-Myers*, 582 U.S. at 264, and we have concluded

that it does not as to the out-of-state plaintiffs' claims, the original plaintiffs'

service of Bimbo for their claims under Rule 4 does not permit the district court

to exercise personal jurisdiction over out-of-state plaintiffs' claims.

　　To hold otherwise would make little practical sense and risk inviting

gamesmanship. For example, after filing the original complaint and serving it

under Rule 4, a plaintiff can amend the complaint under Rule 15 and serve the

22

amended complaint under Rule 5. *See* Fed. R. Civ. P. 15(a) (permitting amendment in certain circumstances as of right and at all times with court leave to be "freely give[n]"); Fed. R. Civ. P. 5(a)(1)(B), (b)(2) (permitting various means of service for "a pleading filed after the original complaint"). By plaintiffs' logic, Rule 4(k) would apply to the original complaint but not the amended one. A district court could thus assess its jurisdiction based solely on the allegations and claims in the original complaint, even if they were modified, supplemented, or even abandoned by the amendment. A plaintiff would also have every reason to file only claims with robust jurisdictional grounds and, after the court obtains personal jurisdiction over the defendant, tack on other, more jurisdictionally dubious claims through amendment, engendering "a loose and spurious form of general jurisdiction" against which *Bristol-Myers* cautioned. 582 U.S. at 264. A faithful reading of Rule 4(k), therefore, forecloses plaintiffs' final argument as well.

## CONCLUSION

For the reasons stated, we join the substantial majority of circuits that have considered the issue and hold that, before conditionally certifying an FLSA collective action and authorizing notification of potential plaintiffs who may opt

in, a district court must ensure its personal jurisdiction over the defendant with regard to the claims of those to be notified. Because nothing in the record supports the district court's personal jurisdiction over the claims of the Connecticut and New York distributors against Bimbo, we **REVERSE** the district court's contrary ruling and **REMAND** the case for further proceedings consistent with this opinion.